Monoure, P.
delivered the opinion of the court.
The main and almost the only question arising in this case is, whether the amounts collected by the appellant, P. G. Peters, as receiver in this case, in Confederate money, ought to have been scaled ?
The following is a statement of the facts and history of the case, so far as material to be stated.
This suit was brought in March 1859 by the appellant, the said P. G. Peters, to enforce his judgment liens against the real estate of LaPayette Neville, deceased, consisting of a tract of land in the county of Nelson known as “Locust Grove,” containing six hundred and fifty-five acres. Other creditors of said Neville, by judgment and otherwise, afterwards came in, on petition or motion, and joined in the prosecution of the suit. On the 1st of October 1859, it appearing to-the court that the sale of the said tract of land must necessarily be made, the court without deciding any other question in the case, and reserving for future decision the question how the proceeds of sale should be distributed, decreed that the said tract of land should be sold by commissioners appointed by the court for the purpose, for cash as to so much of the purchase money as was necessary to defray the expenses of sale, and on a credit of one, two and three years as to the residue, to be paid in three equal annual instalments, to be secured by bonds with good security* *551 bearing interest from the day of sale, and the title to be retained until the purchase money should be fully paid. In August 1860 the said tract of land was ac cordingly sold by the said commissioners, who shortly thereafter made their report to the court. On the 29th of September 1860 the cause came on to be heard on the papers formerly read and the said report of sale, to which report and sale there was no exception; and on consideration thereof the court approved and confirmed the sale. The decree then proceeds in these -words: “ And it appearing from the deeds filed in the cause, that F. G. Peters (the plaintiff and appellant) is now the owner of the dower right of Mary J. Neville in the “Locust Grove” tract of land sold as aforesaid, which dower right the said F. G. Peters elects to commute and receive the value thereof in money; and all the parties in interest in this cause consenting to said election, the court doth adjudge, order and decree that the commissioner in chancery, who may take the accounts herein before directed, (by a decree made on the 8th of May I860,) do ascertain the money value of the dower right of Mary J. Neville in the purchase money of “Locust Grove,” as of the 27th of August 1860, the day of its sale, and make report to the court; and it being suggested that the purchaser of said land desires to pay off and retire one or more of his bonds before they mature, the court doth adjudge, order and decree that F.'G. Peters, who is hereby appointed a receiver for the purpose, be at liberty to withdraw the bonds of Stevens, Fulks & Harvey, for the purchase money of “Locust Grove,” (upon leaving attested copies thereof,) and proceed to collect the same.” But the said Peters was required' first to give bond with good security for the faithful discharge of the duties of his office of receiver.
*552 No other decree or order was made in the case, and nothing further appears to have been done in it for six years and until the 5th of October 1866, when a furtlaer order was made in regard to the taking of the accounts before directed, which had not been taken, either in whole or in part; and the said receiver was directed to report his proceedings at the next term. Nothing further appears to have been done in the case until 1870 and 1871, when commissioner Kirby settled the accounts ordered to be taken by decrees made in the cause in 1860; and on the 8th of March 1871 he made his report. From that report, it appears that the dower right of Mary J. Neville, which had been assigned to the receiver, was valued at $1,401.68; which, with interest from August 27, 1860, to January 1871, making $869.97; amounted to . .$2,271 65; and that his two judgments, with interest to the same day and costs, amounted to . 1,508 86;
making his whole claim against the fund, including interest, . . . $3,780 51.
It-further appears from the report, that the receiver was charged by the commissioner with the following sums of money collected of the purchasers of said land, viz:
I860,. October 5—To cash $700; 1862, November 24, ditto $1,500; 1863, January 3, ditto $1,300; 1863, July 27, ditto $1,000; 1868, September 28, ditto $300.95. 1869, January 1, ditto $20; making the amount of principal collected . . . 4,820 95 ; on which the interest to 1st January, 1871, amounted to . , . 2,271 67; making the whole amount of principal and interest ..... $7,092 62.
*553 From the interest the Commissioner deducted $20 paid William Cahell, and $8.47 costs of suit, and the balance remaining due on that ac- ° count appeared to be . . $7,064 15, with interest on the principal, $4,820.95, from January 1, 1871, till paid. The receiver did not appear and make any exception before the commissioner, but made the following exception and affidavit after the return of the commissioner’s report, viz: 28 47;
EXCEPTION.
“ The plaintiff, F. G. Peters, receiver in this cause, excepts to so much of commissioner Kirby’s report as charges him with the full amount received by him of S. C. Stevens. All of the sums so received, except the sum of $700, as of the 27th of August, 1860, were collections in Confederate money, and liable to scale. See affidavit of F. G. Peters filed herewith, marked " A.’”
AERIDAVIT.

“State of Virginia—Nelson county.

This day Frederick G. Peters personally appeared before me, a justice of the peace in and for the county aforesaid, and made oath, that all the collections made by him in the case of Peter’s'su’g partner v. Neville, &c., were in Confederate notes, save and except the sum of $700 of principal and $21.95 of interest; that he did not appear before said commissioner in said cause, and show said fact, because he was of opinion that said commissioner would, of his own motion, scale all collections made after January 1st, 1862. Given under my hand this 28rd day of March, 1871.
P. H. Cabell, J. P.”
*554 Ou the 15th day of September, 1871, by consent of . , . , , , parties, the cause came on again to be heard, upon the papers formerly read, the said report of eommissi0ner Kirby, the said exception of the plaintiff and receiver thereto, and other exceptions thereto by other-parties, and was argued by counsel: on consideration whereof the court overruled the plaintiff’s exception, and made other rulings in regard to the other exceptions; and recommitted the report to the same commissioner, to restate the accounts according to the said rulings; who was authorized to proceed without any further notice to the parties, except reasonable notice-of the time to the respective counsel engaged in the-cause. In stating the account the commissioner was directed to report any other judgment claims against Lafayette Seville which might be proved before him.
On the 6th day of March, 1872, commissioner Kirby made his supplemental report in obedience to the last mentioned decree, after reasonable notice to all the counsel of all parties interested; which report he-said, he believed was made in conformity with all the rulings of the court in the said decree of the 15th of September, 1871. There was no exception to that report by any party.
On the 27th March, 1872, the cause came on again to be heard on the papers formerly read, with the supplemental report aforesaid, to which there was no exception, and was argued by counsel; on consideration whereof the court ratified and confirmed said report; and also ratified and confirmed the original report, in so far as it was not in conflict with, and modified by said supplemental report; said modification having been made in conformity with rulings and instructions of the court. And the court proceeded to decree a distribution of the fund according to the- *555 rights of the parties respectively, as ascertained by ., . , . , said supplemental report.
From the two decrees of the 15th of Septmeber 1871, and the 27th of March 1872 aforesaid, the plaintiff and receiver, F. Q. Peters, applied to a judge of this court for an appeal; which was accordingly allowed, and which is the case now before us.
The only error in the said decrees assigned in the petition for an appeal is, because the exception taken by the petitioner to the commissioner’s report should have been sustained, and the Confederate notes col lected by him scaled to their good money value.
Was that an error? We are of opinion that it was not. The money collected was due on account of a good money debt, created in the year 1860. That the larger portion of the debt became payable during the war, when Confederate notes constituted the only currency of the country, is a fact which did not of itself authorize the receiver to collect the debt, or any portion of it, in a greatly depreciated currency—depreciated to the extent to which Confederate notes were depreciated at the times of the collection made by the receiver in such notes. The debt continued to be a good money debt, notwithstanding that Confederate notes became the common, or even the only currency of the country, when the deferred instalments became payable; and it was solvable only in good money. The receiver was neither justifiable nor excusable in making the collections which he did make on account of the debt in Confederate notes. The only decree or ' order made by the court in regard to the collection of' the debt was the decree of the 29th of September 1860, appointing a receiver, and giving him liberty, after executing the bond required of him, to withdraw the bonds for the purchase money of the land, and to- *556 proceed to collect the same. At that time Confederate notes were not in existence, and there was no reason to believe they ever would be. The currency then in existence, and likely so to remain indefinitely,, was a specie currency, or, what was equivalent thereto, one easily convertible into specie. When afterwards, and before the deferred instalments of the purchase money became due the currency became depreciated, it was the duty of the receiver not to collect the money in that currency, but to let it remain uncollected, or, at all events, not to collect it without the express direction of the court. The debt was perfectly secure, and was not in the least danger of becoming otherwise at any future time. Its collection was not required by any necessity or convenience of the parties entitled to it, at least other than the receiver himself. It could not be distributed, for it had not been ascertained by any settlement of accounts in the case, who was entitled to it, or in what proportion. He did not pay the money so collected, or any part of it, to any other party, nor into court; nor did he invest it either under the order of the court or on his own responsibility. He did not ask the court for its instruction ; nor did he ever make any report to the court on the subject. He did not consult the wishes of any of the other parties entitled to the money. It does not appear that anybody concerned, besides the debtor and himself, ever knew, before the war was over, that he had collected a dollar of Confederate money on account of the debt. He could have collected it only for his own benefit, and he no doubt used it accordingly. He no doubt believed that the amount due to him would be about equal to the amount he collected, and that the latter would ultimately be applied to the former. At that time the widow’s dower right, which *557 had been assigned to him, had not been valued; and he probably supposed it would be valued higher than it afterwards was. “On the 3d of January 1863,” it is said in the brief of one of the counsel, and no doubt truly, “ Confederate treasury notes were three for one of gold; and on the 27th of July 1863 they were nine for one of gold, as per scale of Miller & Franklin, brokers, which has been adopted by the Circuit court of Nelson county.” At the former period $1,300, and at the latter period $1,000, were collected by the receiver in Confederate notes on account of the debt. He may have been able, as was sometimes the case at that period, to use these notes in such a way as to make them worth their par amount, or nearly so to him. And, if so, it would be unjust in the last degree to charge the other creditors of Neville with the amount of the depreciation of these notes at the periods of their collection. But, whether so or not, it would be unjust and illegal so to do. That the receiver had not a right to make these collections in Confederate money, at least at the risk or loss of any other person concerned than himself, and that he is justly chargeable, and was properly charged with their amount in good money, is, we think, clear, both upon principle and authority; and it is sufficient, in -support of this conclusion, to refer to what was said by this court in the cases of Moss &c. v. Moorman’s adm’or &c., 24 Gratt. 97, and Hannah’s adm’or v. Boyd &c., 25 Id. 692, cited in the argument.
We are therefore of opinion, upon this main question in the ease, that the Circuit court did not err in overruling the exception of the appellant to the report of commissioner Kirby.
We now proceed to notice some other matters of minor importance in the case.
*558 Mundy’s ex’or, whose claim is postponed to all the judgment liens, and cannot be fully satisfied by reason of the deficiency of the fund for distribution, eomplains^ that he has been injured by the act of the commissioner in deducting the amount due to the appellant, including principal, interest and costs on the 1st of January, 1871, $3,955.51, from the principal due by the receiver, $4,820.95, leaving a balance of principal for distribution on that day among the judgment creditors amounting to $865.44, and leaving the entire interest due by the receiver on that day, to-wit: $2,243.20, for distribution; instead of deducting the amount so due to the appellant, first from the said interest, and then from the said principal; thus leaving a balance due by the receiver of $3,108.64, all principal, for distribution. It is contended that the effect of this error, if it be one, is a loss of interest on $2,243.20, the amount of interest due by the receiver aforesaid, from the 1st day of January 1871, to the 27th of March 1872, the date of the decree confirming the commissioner’s report and making distribution of the fund. This loss would be comparatively inconsiderable, amounting only, it seems, to 166.78. But a complete answer to this objection seems to be, that neither Mundy’s ex’or nor any of the other creditors made any exception whatever to the commissioner’s report, on that or any other ground; but suffered the same to be confirmed by the court, and a decree entered in pursuance thereof, and started the objection for the first time in this court, more than three years after the decree was rendered. We are of opinion that the objection came too late, and the parties were then concluded from making it by their omission to except to the commissioner’s report, and by lapse of time and acquiescence. It is a general rule that a *559 commissioner’s report, so far as it is not excepted to, is •admitted to be correct, not only as regards the principles, but as relates to the evidence on which it is founded. 2 Eob. Pr., old ed., p. 883, and the cases there cited. “ Eeports which are erroneous upon the face of them, although not especially excepted to prior to the hearing, may, perhaps, be objected to at the hearing, or in the appellate court. But it is clear that reports not excepted to, cannot be impeached before an appellate court, in relation to matters which may be affected by extraneous testimony. Id. Whether or not interest ought to be charged to an executor in the ■statement of his accounts, has been considered by an appellate court to be a matter the decision of which might be affected by an extraneous testimony. Id. 384, citing White’s ex’or v. Johnson, ¿-c., 2 Munf. 285. Not only is that a question here, but the subject of the objection now for the first time made, might in other respects have been affected by extraneous testimony. Suppose the parties consented that the account should be settled by the commissioner as it was, in regard to the manner of applying the fund in the hands of the receiver to the payment of the amount due to himself. Of course, if said consent had been proved before the commissioner, it would have been binding; and it might have been' proved if an exception had been taken to his mode of stating the •account.
Mundy’s ex’or also complains, that injustice was done by the commissioner to the other creditors of Neville, in deducting the full amount due to the receiver himself from the funds in his hands before anything was paid to the other creditors; thus placing the two on unequal ground, and subjecting the latter to the risk of possible loss from not realizing the *560 whole residue of the trust fund. The same' answer-may be made to this complaint as was made to the other. The subject of it might have been fully ex-plaine¿i by extraneous testimony. The mode of settlement adopted by the commissioner may have been assented to by all the parties concerned. They may have given such assent from motives of liberality or of policy—of liberality to the receiver, who was charged with the Confederate money collected by him at its nominal amount, while he was allowed no commission as receiver; and of policy, to induce him to acquiesce in the charge, and not appeal from the decree. This view is confirmed by what is said in some of the briefs in this case. In that of the appellant’s counsel it is. said: “The decree was drawn by one of the counsel of the first class creditors, and ordered to be entered’ by the court without any objection from any quarter.”' And in that of the counsel of some of the judgment creditors it is said: “In a spirit of liberality this was. permitted and acquiesced in, the counsel for the judgment creditors not excepting to the report, and preparing the decree which was entered.” Certainly it-was too late, several years thereafter, to make the exceptions for the first time and in the appellate court.
We are therefore of opinion that the errors complained of by the appellee, Mundy’s ex’or, are not well founded, and do-not exist. .
But there is another matter referred to in the briefs and in the arguments of counsel which requires attention. After the appeal in this case was obtained, and while it has been pending in this court, to wit: on the 17th of March 1874 a consent decree was made by the Circuit court of Nelson county in this cause, whereby the decree of the 27th of March 1872, so far as it was in favor of Elizabeth Hopkins, executrix of Arthur *561 Hopkins, deceased, was reduced and modified as mentioned in said consent decree. The former decree ought therefore to be amended, as if the latter had been embodied in it, instead of so much thereof as was in favor of the said Hopkins’ executrix as aforesaid.
The said decree of the 27th of March 1872 ought to be further so amended as expressly to give running interest from its date till payment, on the following sums of money thereby decreed to be paid as of that date to the following named parties, viz: $218.84 to R. L. Jefferson; $1,021.21 to Hubbard, Gardner & Co., assignees of John W. Mosby; and $195.57 to H. R. Powell.
The court is therefore of opinion that the decrees appealed from, with the amendments aforesaid, ought to be affirmed.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decrees aforesaid, and the arguments of counsel, is of opinion that the decree appealed from ought to be amended, according to the consent decree made in this cause on the 17th day of March 1874, while it was pending in this court, of which consent decree a certified copy is contained in an appendix to the record of the ease in this court, and was considered by the court as a part of said record; and it is accordingly ordered that the said decrees appealed from be so amended, and that the said decree of the 27th day of March 1872 be read and considered, as if so much of it as is in favor of Elizabeth Hopkins, executrix of Arthur Hopkins, de *562 ceased, were stricken out of the same, and instead thereof, the said consent decree were embodied in the said decree of the 27th day. of March 1872 as part thereof.
The court is further of opinion that the said decree of the 27th day of March 1872 ought to be further so amended as expressly to give running interest from its date till payment, on the following sums of money thereby decreed to be paid as of that date to the following named parties, viz: two hundred and eighteen dollars and eighty-four cents to R. L. Jefferson; ten hundred and twenty-one dollars and twenty-one cents to Hubbard, Gardner & Co., assignees of John W. Mosby; and one hundred and ninety-five dollars and fifty-seven cents to H. R. Powell; and it is accordingly ordered that the said decree of the 27th of March 1872 be so amended.
The court is therefore, and for reasons stated in writing, and filed with the record, further of opinion that there is no error in the said decrees appealed from, amended as aforesaid; and it is decreed and ordered that the said decrees so amended be affirmed, and that the appellees recover of the appellant their costs by them about their defence in this court expended, and damages according to law; and it is ordered that this cause be remanded to the said Circuit court, for further proceedings to be had therein, in conformity with the foregoing opinion and decree; which, is ordered to be certified to the said Circuit court of Helson county.
Decree amended and aeeirmed.