# Richmond.

82  601
s91  474

## SHIPMAN V. FLETCHER.

### DECEMBER 2d, 1886.

1. ARBITRATION AND AWARD—*Misbehavior.*—An award will be set aside on the ground of circumstances in the conduct of the arbitrators, which amount to misbehavior, and result in injury to one of the parties. *Lee* v. *Patillo*, 4 Leigh, 470.
2. IDEM—*Idem—Irregularities.*—Small irregularities are often fatal to an award. And *a fortiori* are such instances of misconduct as are exhibited by the arbitrators when they exclude one of the parties from their presence and admit the other, or his secret partner, or agent, or exclude both parties against the consent of one, during the examination of the witnesses or other evidence, or the arguments of the counsel; or when they employ others to examine the books and papers of the accounts of the parties, and to report conclusions, which, without examining the vouchers, the arbitrators adopt, and make those conclusions the basis of the award.
3. IDEM—*Case at bar.*—A case where matters of importance were submitted to arbitrators and the award is set aside for such acts of misbehavior as aforesaid.

Appeal from decree of circuit court of Alexandria city, rendered 22d September, 1884, in the cause of John J. Shipman against William Fletcher.

The object of the suit was to annul an award for misconduct of arbitrators, going beyond the submission, and committing gross errors to the detriment of the complainant. The decree being adverse, he appealed to this court.

Opinion states the case.

*W. Willoughby* and *John W. Daniel*, for the appellant.

*Robert Christy* and *Charles E. Stuart*, for the appellee.

LACY, J., delivered the opinion of the court.

The bill was filed to set aside an award upon the ground of mistakes and errors contained therein; that the award was in excess of the jurisdiction of the arbitrators and beyond the submission and for misbehavior on the part of the arbitrators, in excluding the parties in interest from the presence of the arbitrators during their sittings and hearing testimony in their absence, admitting the representative of one side and excluding the other side, altogether at times, and in leaving the examination of the principal matters to the determination of experts employed to assist them, and not themselves determining the questions involved. The circuit court held in the decree complained of: First. That there was no misbehavior on the part of the arbitrators; second. That the award was not in excess of their jurisdiction; third. That there is no such want of equity in the award as would justify the interposition of the court. The said circuit court holding the said award to be final and binding as between the parties thereto, and a final settlement of the matters in controversy in contract 561 (this being a contract on the public works in the District of Columbia) between the plaintiff and defendant, and of all matters in controversy between the *plaintiff* and *defendant*, except those arising under the James Creek Canal contract, No. ——, (this was another contract concerning the public works in the District of Columbia), and the matters concerning this were referred to a commissioner for account and report, and is not involved in *this* appeal, but is the subject of a distinct controversy. From this decree this appeal was taken.

The first question is as to the conduct of the arbitrators sitting to decide the questions at issue. The parties plaintiff and defendant, in the circuit court, being engaged as partners or joint contractors in the work embraced by contract 561, and its extensions, amounting in the aggregate cost to the District of Columbia to the sum of $237,069.82, entered into the following agreement:

"WASHINGTON, D. C.,
"February 7, 1887.

"We, the subscribers hereto, each for himself, hereby agree to abide the award and decision made by F. L. Moore and John A. Baker in the matters submitted to them this day by us.

"W. FLETCHER,
"JOHN J. SHIPMAN."

The award was as follows:

"In the matter referred to us for arbitration on February 7, 1877, by John Shipman and William Fletcher, we, the subscribers hereto, certify our award. We find that the said John Shipman is indebted unto the said William Fletcher in the amount of twelve hundred and ninety-one dollars (1,291.96), *and that the amount covers and includes all matters of indebtedness of every kind whatsoever due by each to the other at the date aforesaid,* except any matters or accounts that may exist between them on account of work done on what is termed James Creek canal, which were not considered by us. And we further find and decide all moneys or bonds or other payments for work done on contract number five hundred and sixty-ene (561) and its extensions, except amount for extra hauling of earth claimed by said Shipman, which said hauling was done prior to October 1, 1874, shall be equally divided between the said John Shipman and William Fletcher.

"JOHN A. BAKER.
"F. L. MOORE.

"*Washington, D. C., March* 15, 1887."

A large amount of testimony was taken in the form of depositions, which were submitted and considered. It is proved by these that the submission was on the 7th of February, and the award on the 15th of March, 1887; that the sessions were at night. When finding the books and accounts voluminous and complicated, two experts, J. W. Daniels and John Morris, were selected to assist the arbitrators.

| | | |
|---|---|---:|
| These expert accountants found the total sale of bonds made to cover expenses, - - - | | $142,367 42 |
| Balance of bonds remaining as net proceeds, - | | 94,702 40 |
| Total, - - - - - - - | | $237,069 82 |
| Cash realized on these bonds sold and on the road being: From bonds, - - - - - | | $100,114 22 |
| On the road, - - - - - - - | | 10,980 05 |
| | | $111,094 27 |
| Outstanding liabilities: | | |
| Fletcher's account, - - - - - - | | $2,727 08 |
| Shipman's account, - - - - - | | 1,288 69 |
| | | $4,015 77 |

To meet which, bonds at ninety cents had to be sold to the amount of $5,736.81, which, deducted from the remaining unsold bonds of $94,702.40, left a surplus of $88,965.59 in 3–65 bonds as the net proceeds to be divided between the parties. This result was stated by the said experts in a paper marked F. L. M. and filed with the deposition of Moore. The paper began with a statement showing a balance due Shipman

on various accounts, beginning with one-half of profit on contract No. 561 and extension, - - - - $44,471 23

Cash items, - - - - - - - .1,840 98

Interest, - - . - - - - - - 1,144 86

½ of $2,963.03, work prior to contract, $1,481.51.

Due Shipman, - - - - - - $48,938 58

Received in bonds, - - - - - - 46,038 25

$2,900 33

This account is made up of these general statements, and was handed to the arbitrators. Mr. Moore being asked how he arrived at the first item in that memorandum said: " Only from the fact that these books were made up by Mr. Daniels and another clerk (John Morris), and *their statement of what these books showed* was taken as a fact when neither party objected to it. We had not time to go over the books ourselves and these men were employed to make out this exhibit of what the books showed. I think one man employed one man, and the other, the other man. They were employed by somebody, I suppose by Mr. Fletcher and Mr. Shipman, *when we said that we had not time to go over all this business of such an immense amount as it was.*" It thus appears that the arbitrators did not themselves inspect the books, nor examine the vouchers, but that when the expert accountants employed to make a statement from the books, made up this result in a condensed and general form, consolidating items and striking balances, they accepted this result without *examination* or *inspection* of books or vouchers, and rendered their award, examining only what came in after $2,900, as it appears in the account. And this, as we understand it, is not denied, but is established on every side.

It is also proved in the cause that Shipman was excluded

*against his protest* from the presence of these *judges*, and also Fletcher, and the case proceeded in their absence. But it further appears that a certain person, who was supposed, by Shipman, and doubtless by the arbitrators, to be an employee of the joint contractors, named Birch, was retained in the room where the arbitrators sat all the time *explaining everything.* This Birch has been proved in this case to be *a partner* and sharer of the profits with Fletcher. And he appears to have been much relied on by these arbitrators; so that in effect, while Shipman was excluded, Fletcher was doubly present— present in disguise and in the person of a man of far more intelligence and force than himself. The excuse for excluding both Shipman and Fletcher is that they were quarrelsome and noisy. Fletcher was in a position where he could afford to quarrel and be excluded, Shipman was not.

When the result was announced both parties were surprised, and nobody satisfied apparently, and Birch promised Shipman that Fletcher would set it aside, and they would settle it themselves.

The certificates for payment stood in the name of Shipman, the original contractor, and the money could not be drawn except by Shipman or his attorney; in fact, Birch induced Shipman to give him the requisite power of attorney, upon the promise that Fletcher would set it aside and settle with him justly. However, when the money was drawn, and Shipman at disadvantage, Fletcher and Birch insist on the advantages thus obtained, and assert the award. As to the excess of the arbitrators in their award, as we have said, they not only rendered an award concerning the contract No. 561, and its extensions, but in terms extend it, as we have said, to cover and include all matters of indebtedness of every sort whatsoever. The submission was "in the matters submitted to them this day by us." Thus extending the award beyond mat-

ters considered in the arbitration, and the circuit court so extends it by its decree.

Now we will enquire upon what principle can this award in the first place be said to be the *judgment of these judges* chosen by the parties. It is clear that they know no more now about these accounts, "*immense as they are,*" to use their own language, than they did when chosen. They have not *looked into these books;* they have not added up nor verified a single column on either side; they have neither verified nor *examined* the vouchers; they have settled nothing.

They have made no award; they have blindly subscribed the work of others; they did not have time to examine the subject themselves, and when they did come to do this perfunctory work they were so sensitive and dignified that they could not hear the parties, because they quarreled and were noisy, and so sat with closed doors as to the suitors in their court, as to one side at least.

What a mockery of justice, indeed. The principles upon which awards are upheld by the courts as final and binding on the parties, or are set aside for misconduct in the arbitrators, or excess in the award, are old and familiar, and but little controverted or questioned.

This court, chosen by the parties, can exercise all the powers granted to them by the submission. This is the charter of their existence; they must proceed upon the fullest notice to all, and act only after hearing the evidence adduced before them in due course. Each party is not only entitled to present his own case, both by evidence and argument before the arbitrators, but he is also entitled to be present whenever witnesses or argument are heard on behalf of his opponent.

As was said by a learned judge in an early case in this country, "both parties should have an opportunity of being heard, and that in the presence of each other, that they may

be enabled to apply their testimony to the allegations. The witnesses on both sides are likewise to give their testimony in the presence of the parties, that they may have an opportunity of cross-examining them."

"These rules or similar ones are founded in natural justice, and are absolutely necessary for the due administration of justice in every form whatever." *Hollingsworth* v. *Liper*, 1 Dallas, 161.

In the case of *Hanger* v. *Musgrove*, 1 Dallas, 83, upon entering into the case, the parties who were present began a warm altercation, which, proving troublesome to the referees, they ordered the disputants to withdraw, and called the witnesses in, one after another, examining them separately out of the hearing of both plaintiff and defendant, and finally reported in favor of the former. These facts being established, the report was set aside on the motion of the defendant's counsel.

In *Chaplin* v. *Kerwan*, *id.*, 187, the award was set aside because the evidence of one witness, produced by one party, was taken in the absence of the other party to the controversy.

In the case of *Walker* v. *Frobisher*, 6 Ves. Jr., 70, the arbitrator, after he had told the parties that the hearing was closed, and had dismissed them, examined three persons on the part of the defendant, and when no person was present on the part of the plaintiff, for this the award was set aside. And such conduct is characterized by Chancellor Kent, in *Herrick* v. *Blair*, 1 John. 101, as unfair, partial, and a gross misconduct, and contrary to all the principles of a just proceeding. The rule, says Mr. Morse, requiring him (the arbitrator), to hear nothing on behalf of either party, unless the other party is present, or has distinctly assented to his doing so, is generally very rigidly enforced. Morse on Arb. 126.

The smallest irregularity, says Russell, is often fatal to an award. Russell on Arb. p. 184. It will make no difference in

this respect whether or not the arbitrator shall swear that the testimony, improperly received by him in the absence of a party, or of *both parties*, had no influence upon his decision. He will not be allowed to determine upon this matter. *Walker* v. *Frobisher, supra; Fetherstone* v. *Cooper*, 9 Id. 67; *Dobson* v. *Grover*, 6 Q. B. 637; *Plew* v. *Middleton*, 6 Q. B. 845; *Harvey* v. *Shelton*, 7 Beavan, 459.

Numerous cases upon this point are cited by the counsel, and citations might be multiplied, but it is unnecessary. It obviously lies at the foundation of justice that, in any forum where the rights of any person are to be judicially determined, he has a right to be present, and to be heard through his own witnesses and by counsel, and to hear the testimony of his adversary's witnesses, to cross-examine them, and rebut their testimony. Any trial which excludes him, and tries his case in his absence, is but a mock trial, and should be set aside.

As to the inability of the arbitrators to examine the books and vouchers themselves, we might say nothing, as the case must go back for an account, but it is clear that the arbitrators could form no judgment on what they never examined at all, on what they did not have time to examine.

In *Phipps* v. *Ingram*, 3 Dowling, 669, an award was set aside. It was held that the refusal of an arbitrator to examine witnesses is sufficient misconduct on his part to induce the court to set aside his award, though he may think he has sufficient evidence without them. *Pepper* v. *Gorham*, 4 Moore, 148; *Lee* v. *Patillo*, 4 Leigh, 336; *in re* Haigh's Estate, *Haigh* v. *Haigh*, L. J. Equity, Vol. 40; 420.

Chief Justice Spencer said, in *Van Courtland* v. *Underhill*, 17 Johns. 409: If the arbitrators refuse to hear evidence pertinent and material to the matter in controversy it is unquestionably such conduct as will vitiate an award in a court of equity.

In *Morgan* v. *Mathew*, 2 Ves. Jr. 15, Justice Wilmot said that corruption in the arbitrators or their proceeding contrary to the principles of natural justice, though there be no corruption, as if they will not hear a witness, are good causes for setting aside an award. "It is useless to multiply authorities on this point," said this learned justice, "as the principle cannot be controverted that for misbehavior of the arbitrators in refusing to hear material testimony an award will be set aside in equity. The principle is so fundamentally just that it requires no adjudged cases to support it. How are the arbitrators to do justice between the parties if they refuse to avail themselves of the testimony of witnesses to arrive at a just and conscientious result? It is true the arbitrators are judges of the parties' own choosing, and I would do nothing to discourage arbitration. It is a cheap and peaceful method of settling disputes; but to uphold and maintain the awards of arbitrators when they are guilty of such gross and scandalous misbehavior, as to refuse to hear material evidence, would, in my judgment, produce an universal dread of that mode of adjusting differences."

If from any cause the arbitrators have failed to consider and pass on matters material to the controversy, the award resulting from such an imperfect consideration of the matters in issue cannot be said to be entitled to any weight or authority. Indeed, it is not their judgment; it is no judgment at all, for the controverted matters were not submitted to others, but to them. They are the chosen judges, but they have not sat in judgment; they cannot be allowed to finally decide the merits of a controversy of which they are entirely ignorant.

It is not matter material to consider the alleged errors in the merits of the award as it stands related to the real facts. These errors are claimed to be erroneous on the one hand, reaching, it is said, over thirty thousand dollars, the question in dispute between the parties not having been settled in any

valid or binding way. It is suggested that a book has been lost or stolen, but the commissioner will have before him the copy of this, which was used by the experts in this case, and no injustice can result from this; the award should be set aside for the misconduct of the arbitrators, and the matter referred to a commissioner in chancery for account and report after fully hearing the parties, their witnesses, and their counsel, and it will be so ordered.

The decree of the circuit court of Alexandria city will be reversed and annulled, and the cause remanded for account and report, and further proceedings in order to a final decree.

LEWIS P., and RICHARDSON, J., dissented

DECREE REVERSED.