# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## SHIPMAN v. FLETCHER.

### JUNE 13, 1895.

| 91 | 473 |
| 92 | 700 |
| 91 | 473 |
| 93 | 483 |
| 93 | 551 |
| 91 | 473 |
| †97 | 538 |
| 91 | 473 |
| 98 | 514 |
| 91 | 473 |
| 101 | 79 |
| 101 | 798 |
| 91 | 473 |
| 103 | 593 |
| 91 | 473 |
| 104 | 776 |
| 91 | 473 |
| 110 | 304 |

1. CHANCERY PRACTICE—*Commissioners in Chancery.*—Commissioners in chancery are appointed to assist the court, not to supplant it, and their entire work is always subject to revision by the court, or the judge in vacation. While a court of equity may avail itself of the aid of its commissioners, it cannot abdicate its authority or powers, nor surrender to any one the performance of its judicial functions.

2. CHANCERY PRACTICE—*Report of Commissioner—Weight given.*—The report of a commissioner in chancery, even where the evidence is conflicting, is not entitled to the weight of the verdict of a jury. The functions of a commissioner and of a jury are entirely different. Courts of chancery find and decide both the law and the facts; juries are the triers of the facts only.

3. CHANCERY PRACTICE—*Report of Commissioner—Weight given—Exceptions—Duty of Court.*—The report of a commissioner in chancery is *prima facie* correct, and objection to it must be raised by exceptions. When this is done, it is the duty of the court to examine the evidence returned by the commissioner, and upon which his conclusions are based, and review his conclusions. If the evidence has not been taken by the commissioner, nor in his presence, the court has the same means of ascertaining the truth as the commissioner, and is more competent to pass on the evidence, and draw correct conclusions. If the evidence consists of depositions, and has been taken by the commissioner or in his presence, and is conflicting, and his conclusions are clearly supported by competent and unimpeached witnesses, his report will not be disturbed, unless it is clear that the weight of the testimony is contrary to his conclusions. But, even in such case, the court will review and weigh the evidence, and if not satisfied with the findings of the commissioner will overrule them. The report will only be accepted as conclusive when the testimony, though conflicting, is evenly balanced, and the report is supported by the testimony of competent and unimpeached witnesses.

Opinion.

4. CHANCERY PRACTICE—*Commissioner's Report—Final Decree—Motion under Section 3451 of the Code.*—Where a final decree has been entered in a cause confirming the report of a commissioner, without exception or objection, the appellate court will not reverse such decree for errors alleged in said report and not appearing on the face of it. And in a litigated case such errors cannot be corrected by the trial court on motion under section 3451 of the Code. This section provides for the correction of errors generally, on a judgment by default or bill taken for confessed, and for misprisons of the clerk, or clerical misprisons of the judge, where the judgment may be safely corrected in the manner prescribed by that section. It has no application to errors in the reasoning and conclusions of the court about contested matters.

5. JUDGMENT—*Presumption.*—The judgment of a court of competent jurisdiction is presumed to be right until the contrary is shown. An appellate court will not overturn such judgment unless it is shown to be wrong.

Argued at Richmond.     Decided at Wytheville.

Appeal from a decree of the Circuit Court of the city of Alexandria, pronounced February 27, 1892, in a suit in chancery, wherein the appellant was the complainant, and the appellee was the defendant.

*Affirmed.*

The opinion states the case.

*W. Willoughby* and *John W. Daniel,* for the appellant.

*Edmund Burke, A. W. Armstrong* and *Staples & Munford,* for the appellee.

RIELY, J., delivered the opinion of the court.

This is the sequel of the case of *Shipman* v. *Fletcher,* reported in 82 Va. 601, and in 83 Va. 349.

By the first decision made by this court (82 Va. 601), the award of John A. Baker and F. L. Moore, to whose arbitration William Fletcher and John J. Shipman had submitted all

matters of indebtedness between them, except such as arose
from the work done by them on the James Creek Canal,
was set aside and annulled, and the matters embraced by the
arbitration directed to be referred by the Circuit Court to one
of its commissioners in chancery for account and report.

While the appeal assailing the validity of the award was
pending in this court, an account was taken and settled and
report thereof made to the Circuit Court, by a special com-
missioner appointed by it for the purpose, of the matters of
indebtedness between Shipman and Fletcher growing out of
the James Creek Canal contract. In taking and settling this
account, the commissioner excluded from consideration all
matters embraced in the arbitration, because they had been
adjudicated, and were covered by the award. The second
appeal was taken from the decree of the Circuit Court affirm-
ing the report of the special commissioner and was based on
the ground that the commissioner had erred in not considering
and embracing in his settlement all the partnership transactions
between the parties, which were alleged to be so connected
and related as to cause injustice, if settled separately. By the
decision of this court on this appeal (83 Va. 349), the decree
of the Circuit Court confirming the report of the special com-
missioner, was reversed, and an account directed to be taken
of all of said matters, as well those embraced in the arbitration
as those done under the contract for the James Creek Canal.

In pursuance of these mandates of this court, the Circuit
Court by its two decrees of March 21, 1887 and June 2, 1887,
appointed John S. Fowler a special commissioner to take,
settle and make report of all of said matters between John J.
Shipman and William Fletcher. The commissioner, upon
such settlement, brought William Fletcher in debt to John J.
Shipman in the sum of $14,457.28 with interest thereon from
April 1, 1876. To this report, eighteen exceptions were taken
by John J. Shipman, and fifty-five by William Fletcher. Some

of the exceptions of each party were sustained and the others overruled by the court, and the commissioner directed to reform his report in accordance with the rulings of the court. His report, when reformed, brought John J. Shipman in debt to William Fletcher in the sum of $500.33 with interest from April 1, 1877. To the reformed report, the plaintiff John J. Shipman, filed thirty exceptions, and the defendant William Fletcher filed six.

A part of these exceptions were sustained and the others overruled. After giving the credits and making the deductions made necessary by the disposition by the court of the exceptions, a balance of $828.88, with interest thereon from April 1, 1887, was ascertained to be due from John J. Shipman to William Fletcher, and for this sum and the costs of the suit a decree was entered by the court in favor of William Fletcher against John J. Shipman. From this decree John J. Shipman obtained an appeal from this court.

The account, settled and returned by Commissioner Fowler, was made up not only from the books and papers produced before him by the parties, but also from the depositions of witnesses. Much of the testimony of the witnesses is very conflicting and eminently unsatisfactory. It was earnestly argued and pressed with much force upon the attention and consideration of the court that the matters which the commissioner was called to pass upon and settle, being matters of fact, the court should have accepted his findings as conclusive, overruled the exceptions taken to his report, and confirmed it, and decreed according to the indebtedness ascertained by the commissioner.

This argument involves the consideration of the office of a commissioner in chancery, and the weight and effect to be given by the court to his report.

In a suit in equity, unlike in an action at law, matters of fact as well as questions of law are by the constitution and

immemorial practice of the court determined and adjudicated by it. It is impracticable for the chancellor to investigate the matters of fact arising in a cause and take the testimony to that end; to state and settle the necessary accounts, which are often very complicated; to ascertain and classify the liens upon the property; and to perform other functions of a similar nature necessary to the proper adjudication of the matters of law and fact arising in the varied and important litigation, which pertains to its jurisdiction.

Commissioners in chancery are appointed to assist the chancellor and to relieve him in a large measure of these and other duties incidental to the progress and determination of the cause. For this reason they have been aptly termed the "arms of the court." But from the very necessity of their appointment and the nature of their office, their work is subject to the review of the court. It may accept or reject it, in whole or in part, as its judgment, upon such review, may dictate, whether it be of law or fact. Commissioners are to assist the court, not to supplant it. There is a wide difference between the trial and decision of a suit in equity and of an action at law. In the former, the court finds and decides upon both the facts and the law; while in the latter the jury are the triers of the facts, and the court expounds the law. There is no proper likeness between the report of a commissioner upon matters of fact, and the verdict of a jury. In an action at law, jurors are, under the law, the judges of the facts, and where the testimony is conflicting their verdict is conclusive. They are not in any sense the agents or assistants of a court of law, but perform within their appointed sphere a principal function of judicial trial. The court has a limited revisory power over their action, and may, within certain limits, set aside their verdict and award a new trial, but cannot find the facts. The facts are within the domain of the jury, and the court may not entrench upon it. But not so

with the commissioners of a court of equity. They are its assistants, and their work is subject to the absolute review of the power they are appointed to assist. A court of equity cannot abdicate its authority or powers, nor confide nor surrender absolutely to any one the performance of any of its judicial functions. It may rightfully avail itself of the eyes and arms of its assistants in the proper preparation for judicial determination of the many complicated, difficult, and intricate matters upon which its judgment is invoked, but in it resides the authority, and to it solely belongs the responsibility, to adjudicate them. In it remains the right to form its own conclusions from the results laid before it by its commissioners, and to pronounce its own judgments. Their entire work is subject to its review, consideration, and judgment, and it is in no wise precluded from doing so by their findings or conclusions. There is no propriety, therefore, as is frequently claimed should be done, in holding, that, where the evidence is conflicting, the report of a commissioner in chancery is entitled to the same weight and should be given the same effect as the verdict of a jury.

While the court possesses this absolute power of review, it is the practice to accept the report as *prima facie* correct and to adopt it, unless there is dissatisfaction with the report, and the dissatisfaction is expressed in the form of exceptions filed to it. 2 Robinson's Old Prac., 383; *Peters* v. *Neville's trustee et als.*, 26 Gratt. 549, 559; *Cralle* v. *Cralle*, 84 Va. 198, 201; *National Bank of the Metropolis* v. *Sprague*, 23 N. J. Eq. 81; and *Van Ness* v. *Van Ness*, 32 N. J. Eq., 670. The alleged error must in this way be brought to the attention of the court. When this is done, it is both the province and the duty of the court to examine the evidence and review the conclusions of its commissioner, provided the evidence on which his conclusions are based, is returned with his report, or the proper steps are taken to put it before the court.

*Jacques et als.* v. *M. E. Church et als.*, 2 Johns, Ch. R. 543; and *Jackson* v. *Jackson's Ex'or*, 3 N. J. Eq. 96.

The court is presumed to be more competent to pass upon the evidence and draw correct conclusions from it than the commissioner. Where the testimony of the witnesses is not taken by the commissioner or in his presence, the same avenues to the truth and to the right are open to the court as to the commissioner. All the evidence is in writing, and the court, by special training, learning, and experience, is better qualified to analyze, discriminate, and weigh it, and draw correct conclusions from it, than the commissioner, who is frequently neither a lawyer, nor a skilled accountant.

When the evidence consists of the depositions of witnesses, and they are taken by the commissioner or in his presence, he would have the advantage of noting the demeanor of the witnesses and their manner of testifying, which is important in judging of their credibility and the weight to be attached to their evidence when they contradict each other.

When, therefore, the commissioner has seen and examined the witnesses, and the testimony is conflicting, and his conclusions are clearly supported by competent and unimpeached witnesses, the court will not set aside or disturb his report, unless the weight of the testimony which is contrary to his conclusions is such, on account of the number of the witnesses and the nature of their evidence, as to make it clear that the commissioner has erred. *Haulenbeck* v. *Cronkright*, 23 N. J. Eq. 409; and *Clark* v. *Condit*, 21 N. J. Eq. 322. But even in such case, the court will review and weigh the evidence, and if not satisfied that the commissioner has reached a right conclusion, will overrule his finding. *Holmes* v. *Holmes*, 18 N. J. Eq. 141; *Boyd & Co.* v. *Gunnison & Co.*, 14 W. Va. 1. These views of the office of a commissioner in chancery, and of the weight and effect to be given to his report, seem to us in accordance with right, and best calculated to attain

the ends of justice; to be in accordance with the high and responsible duties of the chancellor, and with the special duties of the commissioner. They are also in accord with the decisions of courts of the highest respectability, and of the greatest weight and influence. *Kimberly* v. *Arms*, 129 U. S. 512; *Worrall's Appeal*, 110 Pa. St. 349, 362; *Boyd & Co.* v. *Gunnison & Co.*, 14 W. Va. 1; *Handy* v. *Scott*, 26 W. Va. 710; *Smith* v. *Yoke*, 27 W. Va. 639, and 2 Barton's Ch. Pr. 656.

In *Kimberly* v. *Arms, supra*, Justice Field, in delivering the opinion of the court, said: "The information which he" (a master in chancery) "may communicate by his findings in such cases, upon the evidence presented to him, is merely advisory to the court, which it may accept and act upon, or disregard in whole or in part, according to its own judgment as to the weight of the evidence.   *   *   *   It cannot of its own motion, or upon the request of one party, abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers.

In *Holmes* v. *Holmes, supra*, in considering the finding of its commissioner upon a question of fact, where the evidence was very conflicting, the chancellor said: "Did the master arrive at a correct conclusion from the evidence? To determine this it is necessary to review and weigh the evidence. For this reason, the master's report is entitled to no special consideration beyond the soundness of his reasoning, and the advantage of seeing the demeanor of the witnesses while examined, which is of importance in judging of their credibility, when they contradict each other. But the report has not the position of the verdict on a motion for a new trial in courts of law. That will not be set aside merely because the court would have come to a different conclusion from the evidence." And the chancellor in that case, while admitting that the testimony in regard to the matter under consideration was "painfully conflicting" reviewed it, and arrived at a result,

which he expressed to be entirely satisfactory to himself, and yet different from that reached by the master.

Counsel for the appellant, in the brief and especially in the oral argument, in support of their contention that the report of a commissioner, where the evidence is conflicting, is to be accepted as conclusive, cited and relied on several cases decided by this court. We have been at the pains of examining and considering not only such as were cited, but all others that could be found bearing on the question under discussion. We are not certain that they were intended to lay down a different rule as to the weight to be given to the report of a commissioner than we have above indicated; but if so, we have no hesitation in qualifying it in accordance with the views we have herein expressed. The question in the original case of *Bowers' Adm'r* v. *Bowers et als.*, 29 Gratt. 697, to which all the other cases refer, was not what weight or effect should be given to the report of a commissioner in chancery, but whether an attorney could act as such commissioner in a suit in which he was of counsel. It was rightly and wisely decided that he could not. The commissioner, like the judge, must be wholly disinterested. He must be free from all suspicion of interest or liability to bias. In discussing the importance of the office of commissioner in chancery and the responsible duties often devolving upon him, the learned judge who delivered the opinion of the court, by way of illustrating and enforcing how necessary it was that the commissioner should be wholly impartial, said: "He is confronted with the witnesses; he sees their deportment, their manner of testifying, their capacity for recalling and accurately detailing past occurrences, whereas the court, which only sees the testimony on paper, is denied the opportunity of applying these obvious tests of accuracy and fidelity.

"When, therefore, a question of fact is referred to a commissioner, depending upon the testimony of witnesses conflicting

in their statements and differing in their recollection, the court must, of necessity, adopt his report, unless in a case of palpable error or mistake.'' We do not understand that it was here intended to declare or prescribe a rule by which courts should be guided in dealing with the report of a commissioner. It is obvious from the language used that it was not intended to declare that the report should be conclusive, because of conflict in the testimony, in a case where the testimony was not taken by the commissioner, nor the witnesses seen by him when giving their testimony; for in such case, he, as well as the court, only sees the testimony on paper, and the court has equal opportunity with him of judging of the credibility of the witnesses. Yet the statement relied on for the contention of the counsel of the appellant is without qualification. If the court had intended, in the case cited, to declare a rule of such broad application as is claimed by them, that the report of the commissioner must be accepted as conclusive when the testimony is conflicting, then, out of regard for consistency, it would at least have limited it to cases where the commissioner personally examined the witnesses or saw them when testifying. But the court did not mean to declare or prescribe any rule. Whether the report was to be accepted as conclusive in all cases of conflict of testimony, or in what cases of conflict of testimony the court should not interfere with it, or whether the court should not in all cases examine and weigh the testimony to test the correctness of the conclusion of the commissioner, was not the question there involved, nor the subject of the decision.

That was not in the mind of the court, or the learned judge who delivered the opinion. It was merely a general statement to illustrate the dignity and importance of the office of commissioner in chancery, from which we do not mean, by anything stated in this opinion, in any wise to detract.

We do not, therefore, think that the case of *Bowers' Adm'r*

v. *Bowers et als.*, *supra*, is authority for the rule contended for. The statement there made, which it is attempted to give such general application, may possibly have been so applied in the subsequent cases, (*Stuart, Palmer & Co.* v. *Hendricks et als.*, 80 Va. 601; *Jones* v. *Degge*, 84 Va. 685; *Porter* v. *Young*, 85 Va. 49; *Robinson* v. *Allen*, 85 Va. 721; *Bowden* v. *Parrish*, 86 Va. 69; *Armentrout et al.* v. *Shafer*, 89 Va. 566; *Magarity* v. *Succop's Adm'r*, 90 Va. 561; and *Moore et al.* v. *Butler et al.*, 90 Va. 683), in which it is quoted for such rule. Apparently this is true. It is not however wholly clear. But if it was intended in these cases to lay down a rule so general and of such broad application as contended for, we are well satisfied from the reports of this court, that it is contrary to the practice in chancery prevailing prior thereto, and is calculated to work injustice.

It would be giving too great weight to the findings of the commissioner, and supplant the authority of the court. So, if the cases referred to, were intended to prescribe so broad a rule, we would be constrained to withhold our assent from it, and return to the long established practice in this State, that the report of a commissioner is always subject to review by the court, and only to be accepted as conclusive when the testimony, though conflicting, is evenly balanced, and the report is supported by the testimony of competent and unimpeached witnesses. A different rule, such as was contended for by the counsel of the appellant, would be a convenient one, save the court from much labor, and often relieve it of an arduous and irksome task, but it would be inconsistent with our views of the nature of the office of chancellor and his duty, and of the office of a commissioner in chancery, and might, and often would, defeat the right. The commissioners in this State are generally lawyers or other competent men, who are both skilled accountants and also capable of weighing testimony and drawing correct conclusions from it, but it is

nevertheless true that there are some communities where it is not always practicable to appoint to the office capable and proper men.    We cannot concede, therefore, that because the testimony in the case at bar is conflicting, the judge of the Circuit Court erred in not accepting the report of the commissioner as conclusive, but considered the exceptions to it, examined the evidence, and reached a conclusion adverse to the finding of the commissioner.    A great part of the testimony was taken before the appointment of the commissioner, and before he had any connection with the case.    He had no opportunity to see those witnesses, or to observe their manner of testifying.    He thus possessed no advantage over the judge of the court in judging of their testimony and the conclusions to be drawn from it.

The record shows that the reports of the commissioner were not acted upon during the session of the court, when, on account of the pressure of business and the limited time available for their consideration, the examination would necessarily have been imperfect, but that on the return of each report the cause was taken by the judge for decision and decree in vacation, that he might have ample opportunity to consider fully and carefully the matters in controversy and to decide them after mature deliberation.    His action, in disposing of the many exceptions taken by the plaintiff and defendant respectively to the original and reformed reports, aggregating one hundred and nine, evinces, as disclosed by his decrees, great care and pains.    Some of the exceptions were wholly sustained and others wholly overruled, while others were sustained in part and overruled in part, and the parts sustained or overruled particularly specified, thus manifesting the great labor bestowed on their consideration, the minuteness of his examination, and the thoroughness of his action. And it was the work of a judge of long and wide experience on the bench, and eminent for his learning and ability.    The

result of his labors, as heretofore stated, was to bring John J. Shipman in debt to William Fletcher in the sum of $828.88 with interest thereon from April 1, 1877.

The partnership between the parties began about October 1, 1874, and the work on the Canal Road Contract, out of which has mainly arisen the matters in dispute, was completed early in the year 1876. Within a short time thereafter, in February, 1876, John J. Shipman employed a Mr. Lawrence, an accountant, to make up an account of the transactions relating to the said work, which is referred to in the record as the "Lawrence balance-sheet;" and this account, together with the partnership books and papers, was submitted to John A. Baker and James Dailey, who were selected by Shipman and Fletcher respectively, to make a settlement between the partners.

These referees, with the aid of the clerks, Murray and Pettis, settled and balanced the accounts, and found that Fletcher was indebted to Shipman in the sum of $5,000 in bonds of the District of Columbia. This indebtedness was discharged by Fletcher. Shipman having sometime thereafter expressed his dissatisfaction with the result of the settlement, he and Fletcher, on February 7, 1877, submitted all matters between them, except those connected with the work on the James Creek Canal, to the arbitration of F. L. Moore and the said John A. Baker, who, with the assistance of two expert accountants, one of them, John Morris, being selected by Shipman, and the other, John W. Daniel, by the arbitrators, made a settlement of the said matters and ascertained that Shipman owed Fletcher the sum of $1,291.96. This award, as has been already stated, was set aside by this court. It was not set aside because the balance found to be due was erroneous, for its correctness was not considered, but solely for misconduct on the part of the arbitrators.

In December, 1877, a settlement was made by Pettis, the

clerk, and a Mr. Rector, who had been employed by Ship-
man for the purpose, of the transactions pertaining to the
James Creek Canal Contract, and they found that Shipman
owed Fletcher $42.80, for which Shipman gave an order in
favor of Fletcher in payment, "in accordance with the settle-
ment made by Pettis and Rector, December 8, 1877." These
settlements were made when the transactions to which they
relate, were fresh in the memory of the partners and of their
clerks. They were made too, when the partnership book in
which the transactions were kept was in existence and before
the arbitrators and persons who made the settlements. It
was afterwards, and before Commissioner Fowler had aught
to do with the case, lost or abstracted, about which there has
been much crimination and recrimination. How or by whom
it was taken, it is unnecessary to discuss. The partnership
matters embraced countless transactions, and involved nearly
a quarter of a million of dollars. Out of any given number
of accountants undertaking to adjust them, it may be safely
affirmed that no two of them would deduce from the mass of
materials furnished by the record the same result. The set-
tlements aforesaid are referred to for the purpose of showing
how nearly they, in the general result, and the decree of the
court, approximate to each other. It is asserted in the peti-
tion for the appeal, and perhaps truly, that "the accounts
are of the most complicated character that ever came before
a court," so complicated that "absolute accuracy was im-
possible."

The approximation between the result of the settlements
adverted to and the indebtedness found by the court, differ-
ing only a few hundred dollars, is therefore, all the more
remarkable. The settlements, considering all the circum-
stances, when and by whom they were made, and that the
original book of the partnership was then in existence, are
strongly persuasive—certainly until the contrary is shown—

that the amount decreed by the court is right, or at least that it is not to the prejudice of the appellant.

The judgment of a court of competent jurisdiction is justly entitled to great weight. It is always presumed to be right until the contrary is shown. An appellate court will not overturn it unless satisfied that it is wrong. It devolves on the party complaining to show error, and to satisfy the appellate court that the judgment or decree complained of is wrong. *Mayor, &c., of Beverly* v. *Attorney General*, 6 H. L. Cases, 310, 332, 333; *Harman* v. *City of Lynchburg*, 33 Gratt. 37; *Hill* v. *Woodward et als.*, 78 Va. 765, 771; Broom's Legal Maxims, mar. p. 911. The controversy here is mainly over disputed items in the controverted transactions between the parties. It is impracticable to discuss them in detail in an opinion. We have examined the large record and considered the various errors assigned and numerous questions raised, with all the care possible. We have made the examination with the light afforded by the very full oral argument of the able counsel in the case, and had, besides, the benefit of their elaborate briefs.

We are unable to say after full consideration that the learned judge of the Circuit Court erred in his disposition of the various exceptions taken to the respective reports of Commissioner Fowler and in the amount finally decreed to be paid by John J. Shipman to William Fletcher.

Nor did the court err in its decree of March 24, 1892, in denying the motion of the complainant to correct the decree of February 27, 1892, by charging the defendant William Fletcher, with the sum of $3,042. It was claimed that Commissioner Fowler had failed through an oversight to make such charge against Fletcher in his report, and the motion was based upon a letter to this effect written by the commissioner on March 8, 1892, to the honorable judge of the Circuit Court at the instance of the counsel for the complainant.

It is to be observed that the decree, which it was attempted to correct, was a final decree entered in the cause on February 27, 1892; and that the letter was written and the motion made subsequent to the entry of the decree.

Section 3451 of the Code, under the provisions of which the motion was made, was enacted for the purpose of providing a prompt and inexpensive remedy for the correction of errors by the court that made them. The first part of the statute provides for the correction by such court of any error in a judgment by default, or in a decree on a bill taken for confessed, rendered or entered by it, for which an appellate court might reverse it. It provides for the correction of errors generally. The decree sought to be corrected here upon such motion was not, however, entered upon a bill taken for confessed, but was entered in a suit brought by the party seeking to make the correction and vigorously defended, and it is not therefore within the provisions of this part of the statute. By another part of the statute it is provided that "the court in which is rendered a judgment or decree, in a cause wherein there is a declaration or pleading, or in the record of the judgment or decree, any mistake, miscalculation, a mis-recital of any name, sum, quantity, or time, when the same is right in any part of the record or proceedings, or when there is any verdict, report of a commissioner, bond, or other writing whereby such judgment or decree may be safely amended; * * * or, in the vacation of the court in which any such judgment or decree is rendered, the judge thereof, may on the motion of any party, amend such judgment or decree according to the truth and justice of the case."

It was upon this part of the statute that the complainant relied to sustain his motion. The errors, which the court or the judge thereof in vacation is thereby authorized to correct, are not all the errors for which an appellate court might re-

verse a judgment or decree, as is provided in the first part of
the statute in regard to a judgment by default or to a decree
upon a bill taken for confessed.

The particular phraseology of the provisions classifies and
limits them.    It was not intended to cover errors in the rea-
soning and conclusion of the court, and to make the judge
thereof an appellate tribunal over himself.

The errors authorized to be corrected by this particular pro-
vision are misprisions of the clerk and what may be termed
clerical misprisions of the court.    This has been the construc-
tion heretofore placed upon the statute.    *Compton* v. *Cline*,
5 Gratt. 137; *Bent* v. *Patton*, 1 Rand. 25; *Commonwealth* v.
*Winstons*, 5 Rand. 546; *Richardson's Ex'rs et als.* v. *Jones*, 12
Gratt. 53; *Dillard's Adm'r* v. *Dillard et al.*, 77 Va. 820,
825; *Powell* v. *Commonwealth*, 11 Gratt. 822; *Goolsby, &c.*
v. *St. John*, 25 Gratt. 158; Freeman on Judgments, sec. 94.

The real ground of the motion was, not that there is a mis-
take in the decree as to a matter which is right in some part
of the record or proceedings in the cause, or that there is the
report of a commissioner or other writing by which the decree
may be safely amended, but that the report itself of the com-
missioner and the decree based thereon are erroneous in that
William Fletcher is not charged with the said sum of $3,042.
The precise question then is the propriety or impropriety of
the charge.    Its determination requires an adjudication by the
court.    To add to or to expunge from a commissioner's ac-
count, to allow or reject an item in it, is a judicial act.
Whether the said sum of money should be charged to William
Fletcher necessitates the reasoning, deliberation, and judg-
ment of the court.    The object of the motion, as is thus seen,
was not to correct a clerical error, if indeed error there be,
but to obtain the adjudication by the judge of a matter, upon
which his judgment had not previously been invoked by an

exception to the report of the commissioner, or otherwise. The subject of the motion was not, therefore, within the class of errors which the statute empowered the court or judge, who committed them, to correct. The motion was properly denied.

The next enquiry is, can this court upon the appeal here decide upon this matter? It is the general rule that the report of a commissioner, so far as it is not excepted to, is taken or admitted to be correct. No exception was taken to the report of Commissioner Fowler in respect to the item in controversy. Whether the said sum of money should be charged to William Fletcher or not is a matter which might be affected by extraneous testimony. If an exception had been filed in the Circuit Court to the report of the commissioner for omitting to make the charge, it might have been met by testimony, or otherwise shown that it ought not to be made. It has been uniformly held by this court that objections to a decree for errors in the report of a commissioner, not appearing on the face of it, cannot avail here unless founded on exceptions taken to the report in the court below. *Simmons* v. *Simmon's Adm'r*, 33 Gratt. 451; *Liberty Savings Bank* v. *Campbell et als.*, 75 Va. 534; *Peters* v. *Neville's Trustee et als.*, 26 Gratt. 549; *Coffman* v. *Sangston et als.*, 21 Gratt. 263; *Cole's Committee* v. *Cole's Adm'r*, 28 Gratt. 365; *Wimbish and wife* v. *Rawlin's Ex. et als.*, 76 Va. 48; *Ashby* v. *Bell*, 80 Va. 811; *Nichols* v. *Kane's Adm'r*, 82 Va. 309; *McComb* v. *Donald's Adm'r*, Id. 903; *Cralle* v. *Cralle*, 84 Va. 198; *Morrison's Ex'or et als.* v. *Householder's Adm'r et als.*, 79 Va. 627; 2 Robinson's Old Pr. 383.

In *Peters* v. *Neville's Trustee et als.*, and in *Cralle* v. *Cralle*, *supra*, it was said that the rule applies both as regards the principles and the evidence upon which the report is founded. The only exception to the rule is where the error is apparent

upon the face of the report and may not be affected by extraneous evidence. The question here is not within the exception. This court, for these reasons, cannot, under its long and well established practice, consider the particular matter in controversy.

The decree appealed from is affirmed.

AFFIRMED.