# Richmond

BERLINA MCENTIRE v. JOHN C. REDFEARN, ET AL.

September 2, 1976.

Record No. 751350.

Present, All the Justices.

*Gerald William Talley*, for appellant.

*Christian C. Westerman*, for appellees.

COMPTON, J., delivered the opinion of the court.

This is a dispute between a natural father and a maternal grandmother over the custody of two children.

On January 10, 1975, the father, appellee John C. Redfearn, filed a petition in the Alexandria Juvenile and Domestic Relations District Court seeking custody of two children born in 1968 and 1969, respectively, to Lizzie McEntire, the unmarried daughter of appellant Berlina McEntire. The father's request was opposed by the maternal grandmother, with whom the children were residing.

The juvenile court, by order of February 6, 1975, awarded custody to the father. On appeal by the grandmother to the circuit court, the trial judge, following a hearing and after observing the children would be "well cared for" by either of the contesting parties, ruled the grandmother had the burden of proving by clear and convincing evidence that the father was unfit and that the best interests of the children would be promoted by granting custody to the grandmother. The court decided such burden had not been carried, therefore custody was again awarded to the father. We granted the grandmother an appeal from the final order entered by the circuit court on July 16, 1975.

The facts are not in substantial dispute. The mother and the two children resided with the grandmother in Alexandria until the mother was killed in 1971. The father, who lived elsewhere, had failed to support the children until he was required to pay $10 per week per child by a court order entered shortly before the mother's death. After the mother died the children continued to reside with and to be cared for by the grandmother, who was about 40 years of age and who had terminated her regular employment to be able to care for the children.

In a custody proceeding during August 1971 the Alexandria juvenile court ordered, after a hearing on the merits at which the father was present, that custody of the two children "be assumed by the Court and [that they be] temporarily placed with [the grandmother]." No appeal was taken by the father from that action of the juvenile court.

The children continued to reside with the grandmother until the February 1975 juvenile court order was entered. The evidence is unclear whether during the period between 1971 and 1975 the father made regular support payments. During this period, however, according to the evidence, the grandmother received $217 per month in Social Security payments on behalf of the children as the result of the mother's death. The father married in November 1974 and thereafter instituted these proceedings. When asked during the circuit court hearing why he failed to seek the children's custody at some prior time, the father testified that until he married he had no one to care for the children.

The question on appeal is whether the wrong rule of law was applied in the circuit court. The grandmother, relying principally on *Dyer v. Howell*, 212 Va. 453, 184 S.E.2d 789 (1971), argues that the burden of proof in this case was not upon her to show the father

unfit but rather the burden was on the father to show that the best interests of the children would be served by a transfer of custody to him. The children's duly appointed guardian *ad litem*, who appears here on behalf of the father, relies, as did the trial judge, on *Rocka* v. *Roanoke County Department of Public Welfare*, 215 Va. 515, 211 S.E.2d 76 (1975), and *Hammack* v. *Wise*, 211 S.E.2d 118 (W. Va. 1975), and contends the trial court properly placed the burden upon the grandmother to show unfitness of the natural father. We disagree. *Dyer* controls, so we reverse.

*Dyer* also dealt with a custody dispute between a parent and non-parent. There, too, the parties disagreed over the placement of the burden of proof on the custody question. The natural father, citing *Judd* v. *Van Horn*, 195 Va. 988, 81 S.E.2d 432 (1954), argued that he was entitled to custody of his daughter unless he was proved unfit, relying on the presumption that the best interests of the child would be served by placing her in his custody. The non-parents in *Dyer*, relying on *Forbes* v. *Haney*, 204 Va. 712, 133 S.E.2d 533 (1963), argued that the proper rule to be applied was that the welfare of the child was the paramount consideration, and that the father's technical rights may be disregarded if such welfare would best be served by denying custody to the parent. A legal factor existed in *Dyer* which made the *Judd* rule (followed in *Rocka*) inapplicable. In *Dyer*, more than two years before the father's petition for custody had been filed, the juvenile court had formally divested the parent of custody and awarded custody to the non-parents. There we said:

> "For Dyer to be entitled to a later change of custody, the burden was upon him to show that circumstances had so changed that it would be in Kathy's best interests to transfer her custody to him. Thus, the rule of decision in this case is that the welfare of the child is the paramount consideration." 212 Va. at 456, 184 S.E.2d at 792.

A legal factor similar to the one that existed in *Dyer* is present in this case. In August 1971, more than four years before the father instituted the present proceeding, the juvenile court, after a hearing at which the father was present, made an unappealed adjudication that custody should be assumed by the Court to the exclusion of the father. See Code § 16.1-178(2). This order was a determination by a court of competent jurisdiction of the custody question on its merits based upon then-existing facts. The order further provided for tem-

porary placement of the children with the grandmother. Consequently, the father here, like the father in *Dyer*, when he instituted the present proceeding, was not clothed with the parental presumption generally accorded natural parents in a dispute with non-parents, because his parental custody rights were altered by the 1971 order. We hold, therefore, that in this proceeding the welfare of these children is the paramount consideration, *Commonwealth* v. *Hayes*, 215 Va. 49, 53, 205 S.E.2d 644, 647 (1974), and that the burden was upon the father to prove that circumstances had so changed since the 1971 order that it would be in the children's best interests to transfer custody to him. *See Harry* v. *Fisher*, 216 Va. 530, 221 S.E.2d 118 (1976); *Szemler* v. *Clements*, 214 Va. 639, 202 S.E.2d 880 (1974).

The appellees' reliance upon *Rocka, Hammack* and *Wilkerson* v. *Wilkerson*, 214 Va. 395, 200 S.E.2d 581 (1973), is misplaced. In *Rocka*, an almost destitute mother asked a local board of public welfare to take her children and place them temporarily in a foster home until she could find work and a place to live. When the mother contested the subsequent efforts of the welfare department to obtain permanent custody of the children with the right to place them for adoption, we applied the general rule of parent versus non-parent disputes "that the parent prevails unless the non-parent bears the burden of proving, by clear and convincing evidence, both that the parent is unfit and that the best interest of the child will be promoted by granting custody to the non-parent." 215 Va. at 518, 211 S.E.2d at 78. But unlike the case at bar, in *Rocka*, there had been no prior merits custody determination by a court of competent jurisdiction adverse to the parent, and it is for this reason the *Rocka* rule does not apply here. Likewise in *Hammack*, there had been no such prior adjudication of the custody issue when the maternal grandmother sought custody from the putative father after the mother died in childbirth.

Nor had such a merits determination of custody been made in *Wilkerson*, another dispute between parent and non-parents. There, a temporary custody order in favor of the non-parents had been entered by agreement upon petition of the father to protect the child from the unfit mother and to maintain the status quo during pendency of the parents' divorce proceeding. We pointed out in *Wilkerson* that the agreed temporary custody order had "neither the dignity nor the effect of a final order of custody upon the merits." 214 Va. at 397, 200 S.E.2d at 583.

For these reasons, we are of opinion the order appealed from is erroneous because the circuit court applied the wrong rule of law.

We must now consider the proceedings upon remand. Almost 18 months have passed since the last evidentiary hearing, so we are unable at this time properly to determine the issue of custody from the record before us. Accordingly, we will remand the case to the circuit court with direction to hold forthwith another hearing upon the father's petition for custody, applying the law in a manner consistent with this opinion. At the bar three months ago, counsel represented the children were residing with the father and his wife. If they still so reside, the children will remain temporarily in the father's custody pending the circuit court's decision of the issues raised by his petition.

*Reversed and remanded.*