## Richmond

JACK HILTON WALKER, SR., And RITA B. WALKER

V.

DEPARTMENT OF PUBLIC WELFARE OF PAGE COUNTY,
VIRGINIA

April 30, 1982.

Record No. 791630.

Present: All the Justices.

*Samuel S. Price (Hackley, Shanks & Price*, on brief), for appellants.

*John R. Bushey, Jr.,* for appellee.

RUSSELL, J., delivered the opinion of the Court.

This case presents a question with respect to the procedure applicable to an appeal from orders of a juvenile and domestic relations district court terminating residual parental rights pursuant to Code § 16.1-283.

The appellants, Jack Hilton Walker, Sr., and Rita B. Walker (parents), were married in December 1975 when both were nineteen years old. Their first child, Jack, Jr., was born on January 20, 1976. The parents were unemployed, poorly educated, and without a fixed residence. Shortly after the child's birth, the family moved in with a relative in Page County and had repeated contacts with appellee, Page County Department of Public Welfare (Department). The Department took emergency custody of Jack, Jr., on May 9, 1977, when both parents were incarcerated in the Page County Jail on petit larceny charges. The Juvenile and Domestic Relations District Court of Page County vested immediate and temporary custody in the Department by summary prehearing order and appointed a *guardian ad litem* to represent the interests of the child. The Department placed Jack, Jr., in a foster home and the juvenile court confirmed this custody by order entered on July 20, 1977.

On March 10, 1978, the Department petitioned the juvenile court for the termination of the parents' residual parental rights pursuant to Code § 16.1-283. The Department filed a report of pre-hearing investigation stating that the foster parents were will-

ing and able to adopt Jack, Jr., if the parental rights were terminated. On July 5, 1978, the juvenile court entered an interlocutory order terminating the residual parental rights of the parents subject to a six-month period in which a "psychological" was to be done on the parents and filed with the court. The interlocutory order also provided that a full hearing would be held as to the custody of the child before the entry of a final order. The juvenile court entered its final order on January 17, 1979, terminating the residual parental rights and ordering that the child be placed for adoption. The order did not specifically allocate the child's custody to anyone, but directed that he be "permanently separated from his natural parents and ordered placed for adoption."

The parents appealed to the Circuit Court of Page County where trial was held beginning April 13, 1979. At the conclusion of the trial, at 9:45 p.m. on Saturday, April 14, 1979, the court stated that it was unable on the evidence to make a finding that the natural parents were unfit. However, citing *Shank v. Dept. Social Services*, 217 Va. 506, 230 S.E.2d 454 (1976), *Watson v. Shepard*, 217 Va. 538, 229 S.E.2d 897 (1976), and *McEntire v. Redfearn*, 217 Va. 313, 227 S.E.2d 741 (1976), the court ruled that the interlocutory order of the juvenile court, not having been appealed within ten days of its entry, was final and that the parents had failed to carry the burden of showing that circumstances had so changed since its entry that it would be in the child's best interests to transfer custody to them. The court entered its decree purporting to merge the juvenile court's interlocutory order into a final order terminating the residual parental rights of the natural parents.

The parents contend that the circuit court erred in placing the burden of proof upon them rather than upon the Department, as should have occurred in a trial *de novo*. We agree. The crux of the error lies in the Department's confusion between appeals of custody determinations and appeals of orders terminating residual parental rights.

The Department contends that this case is controlled by *Watson v. Shepard, supra*, which held that when a parent, having been divested of the custody of a child by order of a court of competent jurisdiction, seeks to regain it on appeal, the burden is upon the parent to show that circumstances have so changed since the entry of the former custody order that it would be in the child's best interests to change custody. *See also McEntire v. Redfearn,*

*supra.* Both *Watson* and *McEntire* were custody cases on appeal within the statutory framework of Code § 16.1-298. That section, enacted to provide continuity and stability in cases of children who are the subjects of litigation, provides in part that a petition for, or the pendency of, an appeal shall not suspend the juvenile court's order or affect the custody of a child unless so ordered by a judge of the juvenile court, a circuit court or this court. The circuit court, applying the *Watson* rule, took the position that the interlocutory order of the juvenile court was an adjudication of unfitness of the parents and caused the burden to shift to them in the circuit court to show that the best interests of the child required that the juvenile court's interlocutory order be modified.

Unlike *Watson* and *McEntire,* the case at bar deals with the appeal of an order terminating residual parental rights. The question of custody was not before the court.[1] Code § 16.1-283, enacted in 1977, provides standards and procedural safeguards for the termination of residual parental rights which were not present in the former statutory scheme under which *Shank v. Dept. Social Services, supra,* was decided. The distinction between termination of parental custodial rights and residual parental rights is crucial here, as it was in *Weaver v. Roanoke Dept. of Human Res.,* 220 Va. 921, 265 S.E.2d 692 (1980).

In *Weaver,* decided more than a year after the circuit court's determination in this case, this court for the first time considered the termination of residual parental rights pursuant to Code § 16.1-283. Then Chief Justice I'Anson wrote:

> While it may be occasionally necessary to sever the legal relationship between parent and child, those circumstances are rare. Statutes terminating the legal relationship between parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship.

---

[1] Although the juvenile court's interlocutory order had mentioned the Department's petition for "permanent custody" and had ordered "that a full hearing into all of the circumstances surrounding the custody of this child being placed in the Welfare Department of Page County shall be reviewed and brought up to date prior to further Order or final Order," the interlocutory order made no final disposition of custody. The final order of the juvenile court, while not easy to interpret, appears only to confirm the termination of residual parental rights without any further decision as to custody.

The Department stresses the significance of the prior court orders divesting both parents of their custodial rights and responsibilities. We have, as the Department notes, repeatedly held that where a court has entered a final order divesting a parent of custodial rights, the burden is on the parent seeking custody to show that circumstances have so changed that it would be in the children's best interests to restore custody to the parent. [Citations omitted.] The proceeding below, however, concerned the termination of residual parental rights as well as custody of the children. [Footnote omitted.] A final order terminating parental custodial rights does not sever residual parental rights. . . . In connection with the Department's petition for termination of residual parental rights, however, the court order divesting them of custodial rights did not place upon the parents the burden of demonstrating that their residual parental rights should not be terminated.

220 Va. at 926-27, 265 S.E.2d at 695 (1980).

■ The Department also contends that the interlocutory order of the juvenile court was appealable, and, not having been appealed within ten days of entry, became final, affecting the burden of proof in the circuit court. We find no support for this proposition. Only final orders are appealable. The jurisdiction, practice, and procedure of the juvenile and domestic relations district courts are entirely statutory, and are set forth in Chapter 11 of Title 16.1 of the Code (Code § 16.1-226 *et seq.*). The only provision therein relating to appeals from the juvenile court to the circuit court is found in § 16.1-296, the first sentence of which provides:

From any *final* order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction, an appeal may be taken in accordance with the provisions of Chapter 7 (§ 16.1-123 *et seq.*) of Title 16.1. [Emphasis added.]

■ The cross-reference relates to Code § 16.1-136, contained in Chapter 7[2] of Title 16.1 which provides in pertinent part:

---

[2] Although Chapter 7 of Title 16.1 relates to "Jurisdiction and Procedure in Criminal Matters," the above-quoted cross-reference remains the only vehicle for appeal from the

Any appeal taken under the provisions of this chapter shall be heard de novo in the appellate court and shall be tried without formal pleadings in writing . . . .

We have repeatedly held that an appeal to the circuit court from a court not of record under Code § 16.1-136 annuls the judgment of the inferior tribunal as completely as if there had been no previous trial. *Gaskill* v. *Commonwealth*, 206 Va. 486, 144 S.E.2d 293 (1965), and that such a trial *de novo* in the circuit court grants to a litigant every advantage which would have been his had the case been tried originally in such court. *Royals v. City of Hampton*, 201 Va. 552, 111 S.E.2d 795 (1960).

■ Had the parents been accorded the benefit of a trial *de novo,* the burden would have rested upon the Department to prove by clear and convincing evidence that such termination was in the best interests of the child and that: (1) the neglect or abuse suffered by such child presented a serious and substantial threat to his life, health, or development; and (2) it was not reasonably likely that the conditions which resulted in such neglect or abuse could be substantially corrected or eliminated so as to allow the child's safe return to his parents within a reasonable period of time. Code § 16.1-283. *See Knox* v. *Lynchburg Div. Soc. Serv.*, 223 Va. 213, 288 S.E.2d 399 (1982).

■ Since we must reverse on procedural grounds, it has been unnecessary to examine the evidence as to its sufficiency to support the decree appealed from. However, we note that while the record is replete with evidence of neglect of the child when the Department first became involved with the case, there was also evidence that the parents' living conditions had stabilized to some extent by the time the circuit court made its determination in April 1979. We cannot, therefore, find the error harmless.

The judgment will be reversed and the case remanded to the circuit court for trial *de novo* on the foregoing principles, in light of the circumstances shown by the evidence to exist when the case is retried.

*Reversed and remanded.*

juvenile court to the circuit court, having been reenacted as a part of the Juvenile and Domestic Relations District Court Law of 1977.