BEALES, J.,
dissenting.
After reviewing the record and argument, I would find that this appeal is not properly before us. I believe this Court should not address the merits here because this appeal was *267 not ripe for consideration by the circuit court nor ripe for consideration by this Court. Cf. Jewell Ridge Coal Corp. v. Henderson, 229 Va. 266, 268-69, 329 S.E.2d 48, 50 (1985) (noting that the decision of a commission to deny peer review is not ripe for appeal as no final decision on the merits of the case have been reached). The Fairfax County Circuit Court did not have jurisdiction to take this case on appeal, and, therefore, the Court of Appeals should not consider the questions presented in this case, given its posture.
Under Virginia’s statutes, which limit the jurisdiction of the courts, “[a]n appeal may be taken from a final order in a proceeding under” the UCCJEA. Code § 20-146.35 (emphasis added). See also Code § 16.1-296 (allowing appeals to circuit courts “[f|rom any final order or judgment of the juvenile court” (emphasis added)). The legislature has limited the circuit courts’ ability to hear appeals from the JDR courts to those appeals that are “provided by law,” i.e., final orders. Code § 17.1-513; Walker v. Department of Public Welfare, 223 Va. 557, 562, 290 S.E.2d 887, 890 (1982) (“Only final orders [of a JDR court] are appealable.”). Thus, an action becomes ripe for appeal and within the subject matter jurisdiction of the circuit court when the JDR court has entered an order that is final, i.e., one “that disposes of the whole subject, gives all the relief contemplated, and leaves nothing to be done in the cause save to superintend ministerially compliance with the order.” Alexander v. Morgan, 19 Va.App. 538, 540, 452 S.E.2d 370, 371 (1995). If the JDR court order regarding registration is a final order, then appeal to the circuit court was appropriate. However, I do not believe it was a final order.
Initially, to determine whether the JDR order was a final order, it is important to consider the posture of this case— what relief the petitioner requested and what remained to be done. Here, Prashad initiated the case by filing two petitions in the JDR court, one labeled “Emergency Petition for Registration and Expedited Enforcement of Child Custody Order and Petition for Ex Parte Order to Take Physical Custody of Child” (Emergency Petition) and another labeled “Petition for *268 Modification of Custody” (Modification Petition). In the Emergency Petition and its memorandum, Prashad asked for immediate physical custody of the child, registration of four North Carolina orders which included a September 20, 2006 consent order regarding custody of A.C.C. (“with the exception of any and all orders recognizing any parental rights” of Copeland), and enforcement of some provisions in the September 20, 2006 custody order, such as ordering Spivey and Copeland to allow her visitation with the child. The Emergency Petition also referenced the Modification Petition as providing additional support for the Emergency Petition. The Modification Petition asked that Prashad be granted sole legal and physical custody of A.C.C., and it specifically referenced the same four North Carolina orders that were listed in the Emergency Petition. The arguments in the Modification Petition were essentially the same as those in the Emergency Petition and its supporting memorandum.
Although the actual order is not contained in the record before this Court, it appears based on the parties’ representations that the JDR court denied the request in Prashad’s Emergency Petition for physical custody of the child fairly soon after the petitions were filed. The JDR court then set a hearing for September 16 and 18, 2008, on the Modification Petition.
In addition, the JDR court heard argument on the registration of the North Carolina orders on March 12, 2008. During that hearing, the court explained, “Obviously, before this Court can do anything, whether enforcement or modification of the North Carolina order, it has to first register it.... ” The court noted, “It is up to this Court at this point, once the registration has been addressed to then address, obviously, the grounds of modification in terms of what [the child’s] best interests are, and how these two individuals are connected to her in terms of this child’s well-being.” The JDR court found all four North Carolina orders should be registered in their entirety and entered a handwritten order, retroactively registering the orders as of the day that Prashad had filed her petitions with the JDR clerk’s office. The handwritten order *269 does not mention the pending hearing on modification of the North Carolina custody order, which was still on the JDR court’s docket.
Prashad then filed a notice of appeal in the JDR clerk’s office. The notice indicated that she was appealing to the circuit court from an “order registering (4) NC orders with respect to Copeland.”
In the circuit court, Spivey filed a “Motion for Summary Judgment” and supporting memorandum. In her written response to Spivey’s motion, Prashad noted that the September 2008 hearing in the JDR court[8] was set “so that the matter currently before this [Circuit] Court could be decided, as the determination would involve whether or not Copeland would remain a party to the case.” During the hearing on the motion for summary judgment, Prashad’s counsel noted that she had “invoked the jurisdiction of the court which allows for, under the UCCJEA, simultaneous requests for enforcement and registration [of orders].” She also noted that “in order to modify [the North Carolina order], this Court has to register it ...” and pointed out that registering an order was the first step towards its modification.
The circuit court granted Spivey’s motion for summary judgment and entered an order, dated October 9, 2008, that registered the North Carolina orders in their entirety and remanded the case “to the jurisdiction” of the JDR court. Prashad then appealed to this Court from the circuit court’s order.
I would find that the JDR court’s order to register the four North Carolina orders in their entirety was not a final order in this matter. This order, although it responded to a request in *270 the Emergency Petition, was integral to the relief that Prashad had requested simultaneously—that she be given primary custody of A.C.C.—in the Modification Petition.[9] As she (and both lower courts) admitted during these proceedings, registration of the orders was simply a preliminary step to reaching the actual issue in this case—possible modification of the North Carolina custody order.
Registration is usually a preliminary step to enforcement or amendment of a custody order previously entered by an out-of-state court. See Code §§ 20-108; 20-146.26; 20-146.27; cf. Ohlen v. Shively, 16 Va.App. 419, 423, 430 S.E.2d 559, 561 (1993) (discussing the change of circumstances requirement for amendment of pre-existing orders). Under Code § 20-146.26(A), “[a] child custody determination issued by a court of another state may be registered in this Commonwealth, with or without a simultaneous request for enforcement, by sending [the appropriate documents] to the appropriate juvenile and domestic relations district court in this Commonwealth.... ” Here, Prashad filed the request for registration of the four North Carolina orders “with a simultaneous request” for enforcement and for modification of the custody order because she wanted the North Carolina custody order amended to give her sole custody of the child and to take the custody rights of both Spivey and Copeland. Clearly, registration here was simply a procedural prerequisite to the overall enforcement and modification action that Prashad initiated and was pursuing. Cf. Gary v. Board of Zoning Appeals, 246 Va. 1, 1-2, 429 S.E.2d 875, 875 (1993) (finding the appeal was not ripe because the board had not made a decision regarding the property in dispute and, thus, had not “exhausted” its “powers” over the controversy). In fact, the JDR court apparently did not believe that its order registering the four North Carolina orders was a final order in the case. As that court noted *271 during the March 12, 2008 hearing, “Obviously, before this Court can do anything, whether enforcement or modification of the North Carolina order, it has to first register it....” Cf. Alexander, 19 Va.App. at 540, 452 S.E.2d at 372 (noting that the Norfolk JDR court’s memorandum clearly stated that the court expected an endorsed order would be entered and that the case was continued, and, therefore, the memorandum was not the final order).[10]
Both of Prashad’s petitions involved the same adverse parties, the same child, and the same orders, and they were filed simultaneously in the JDR court. When the JDR court denied her request for registration of only part of the North Carolina orders, that court did not resolve all the issues between the parties. Whether the orders were registered in full or in part, their registration did not resolve the substantive issues raised in the simultaneously filed petitions. See Whitaker v. Day, 32 Va.App. 737, 743, 530 S.E.2d 924, 927 (2000) (finding that an order is not final simply because it will possibly affect the outcome of a case). By simply entering the registration order, the JDR court had not yet resolved the controversy raised in the simultaneously filed petitions. That court still had to determine whether Prashad’s custody rights, Spivey’s custody rights, and, of course, Copeland’s custody rights would remain the same as initially granted in the September 20, 2006 North Carolina custody order. Therefore, there was no final order entered here, “one that disposes of the whole subject, gives all the relief contemplated, and leaves nothing to be done in the cause save to superintend ministerially compliance with the order.” Alexander, 19 Va.App. at 540, 452 S.E.2d at 371; McLane v. Vereen, 278 Va. 65, 70, 677 *272 S.E.2d 294, 297 (2009). Thus, the circuit court did not have jurisdiction to consider the appeal of the March 12, 2008 JDR court order. Code § 17.1-518; Walker, 223 Va. at 562, 290 S.E.2d at 890.[11]
The majority opinion contends in a footnote that the March 12, 2008 JDR court order was a final order, relying on language in the UCCJEA and a Michigan case that distinguishes the registration of an order from other “proceedings.” However, neither the UCCJEA nor Jamil v. Johan, 280 Mich.App. 92, 760 N.W.2d 266 (2008), defines a “final order.” Therefore, these points made by the majority here are not particularly relevant to this case, as the fact that proceedings can be “distinctly separate” in the abstract does not establish the fact that an order in a particular case is final.
As discussed supra, final orders resolve the controversies between the litigants. In order to determine if the controversies are resolved, examination of the particular proceedings in the case, including the parties’ petitions and motions, is often required. Therefore, simply indicating that two requests are “separate” does not resolve the question of whether an order is final.[12] Instead, the particular case must be examined to determine if an order is final. In this case, the registration of the custody order did not resolve the controversy. Here, although Prashad filed separate petitions and gave them separate titles, in both petitions she asked that the existing North Carolina custody order be modified. In the Emergency Peti *273 tion, she did not simply ask that the pre-existing order be registered, but instead asked that a portion of the order be excluded, effectively asking the JDR court to modify the order without considering if any change of circumstances had occurred since the entry of the order. Therefore, although there may be instances where an order that registers an out-of-state custody order is a final order, we are not presented with such an instance here, especially since both petitions in this case (the one acted on by the JDR court and the one that had not been) dealt with the same custody and visitation dispute between the same parties over the same child. In short, both petitions filed here dealt with the same overall dispute, which was not resolved by simply registering the North Carolina orders, since their registration still left the biggest part of the dispute to be resolved later by the JDR court.
In Sharma v. Sharma, 46 Va.App. 584, 592-93, 620 S.E.2d 553, 557-58 (2005), this Court discussed attempts to appeal an individual order entered by a JDR court in child support cases. In Sharma, the appellant claimed he was not required to provide an appeal bond because he appealed only the JDR order that had increased the amount of his child support obligation, but not the JDR order finding that he was in arrears. We found in that case that, where orders are “intrinsically, inherently, and logically related,” a party cannot appeal only one of several orders entered during resolution of the issues. Id. at 592, 620 S.E.2d at 557. We then concluded that “these two issues could not be separated on appeal, nor could the judgment appealed be bifurcated.” Id. Here, similarly, the issues of registration of the North Carolina custody order and of modification of that same order cannot be separated and should not have been bifurcated by an appeal.[13]
*274 Furthermore, the fact that the parties here do not raise this issue on appeal is irrelevant.
Subject matter .jurisdiction alone cannot be waived or conferred on the court by agreement of the parties. A defect in subject matter jurisdiction cannot be cured by reissuance of process, passage of time, or pleading amendment. While a court always has jurisdiction to determine whether it has subject matter jurisdiction, a judgment on the merits made without subject matter jurisdiction is null and void. Likewise, any subsequent proceeding based on such a defective judgment is void or a nullity.
Even more significant, the lack of subject matter jurisdiction can be raised at any time in the proceedings, even for the first time on appeal by the court sua sponte.
Morrison v. Bestler, 239 Va. 166, 169-70, 387 S.E.2d 753, 755-56 (1990) (citations omitted) (emphasis added). Therefore, as the circuit court did not have jurisdiction at the time it entered its order, any ruling that we reach in this case would likewise be void. Id. at 170, 387 S.E.2d at 756.
In summary, I believe the circuit court did not have jurisdiction to consider Prashad’s appeal because she did not appeal a final order of the JDR court. Consequently, we should not consider the merits of the circuit court’s void order. Therefore, I respectfully dissent.

. The JDR court held this hearing in September 2008, according to the representations of the parties, but did not enter its order denying the Modification Petition until after the circuit court had granted Spivey’s motion for summary judgment and Prashad had noted her appeal of that ruling to this Court. At present, we are informed by the parties, an appeal of the JDR court’s refusal to modify the North Carolina custody order is pending in the circuit court.

. The substantive relief requested in the Emergency Petition, that Prashad be granted temporary custody of the child and that her visitation be enforced, was denied prior to the JDR court’s hearing on registration of the orders. That order was not appealed to the circuit court.

. The fact that Prashad filed two petitions is not controlling in this analysis. Cf. Comcast of Chesterfield County, Inc. v. Board of Supervisors, 277 Va. 293, 301, 672 S.E.2d 870, 873-74 (2009) (finding that, although the circuit court had bifurcated the proceedings to address a classification issue first, the order on classification was not a final order). Each of Prashad's petitions essentially requests the same relief—that she be granted primary custody of the child. Therefore, her decision to use more than one petition should not control the jurisdiction of the courts in this matter.

. If the order registering the North Carolina orders is considered an interlocutory order of the JDR court, then my analysis on this issue would not change. Under Code § 16.1-296, "[t]he only provision [in the Code sections on JDR court procedure] relating to appeals from the juvenile court to the circuit court,” only final orders can be appealed, not interlocutory orders. Walker, 223 Va. at 562, 290 S.E.2d at 890. Therefore, the JDR court's order registering the four North Carolina orders, if interlocutory, still was not appealable to the circuit court.

. For example, although modification of child support and enforcement of child support are separate proceedings, a party cannot necessarily appeal one determination without appealing the other. See Sharma v. Sharma, 46 Va.App. 584, 592-93, 620 S.E.2d 553, 557-58 (2005).

. If appeals such as the current one are allowed, then the circuit courts and this Court will be asked to resolve numerous half-litigated cases. For example, if a court entered an order finding that a contract was enforceable, under the example provided by the case currently before us, then that order would be appealable before that initial court could address the more substantive controversies in the case, such as *274 whether a party breached the contract and what remedy was appropriate, if any. In addition to the obvious problems of judicial economy from such appeals, this Court would also find it extremely difficult to apply Code § 8.01-678 and determine whether any error in the lower court was harmless because the effect of any error on the ultimate outcome of the case would still be unknown. Indeed, this case presents such a problem as it is unclear how any alleged error in registering the North Carolina orders materially affected Prashad and her child custody rights, which are still being litigated in the Fairfax courts.