COURT OF APPEALS OF VIRGINIA

**UNPUBLISHED**

Present:   Judges Beales, Alston and Senior Judge Haley
Argued at Richmond, Virginia


DARCI A. REILLY

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1369-15-2                      JUDGE RANDOLPH A. BEALES
                                                    DECEMBER 13, 2016
PATRICK L. REILLY


                    FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                                  Timothy J. Hauler, Judge

                Amanda Padula-Wilson (Parental Rights Law Center, on briefs), for
                appellant.

                Sherry L. Gill (Jacobs, Caudill, & Gill, on briefs), Guardian *ad litem*
                for the infant children.

                No brief or argument for appellee Patrick L. Reilly.


        Darci Reilly ("mother") appeals the circuit court's decision denying her a new trial and

instead entering a "Consent Order" that mother had not signed.  Mother also argues that her due

process rights were violated when father's attorney and the guardian *ad litem* made representations

to the court without giving mother an opportunity to cross-examine the attorneys, that the circuit

court erred when it improperly delegated visitation determinations to the guardian *ad litem*, and that

the circuit court erred by awarding Patrick Reilly ("father") attorney's fees as a punitive measure.


--------

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND[1]

On April 2, 2014, mother, father, and Sherry Gill (the "guardian *ad litem*" or "GAL") appeared before Judge Frederick G. Rockwell, III in the circuit court for a *de novo* hearing after an appeal from the juvenile and domestic relations district court. On July 28, 2014, Judge Rockwell entered an order recusing himself from the matter. The order reads, "Came the above [custody and visitation] matter before the Court on July 28, 2014 for presentation of a consent order and for a hearing on support. At the commencement of the hearing the Respondent [mother] motioned for recusal, and it appearing appropriate to do so it is hereby . . . granted." After Judge Rockwell's recusal, Judge Hauler presided over the remainder of the proceedings in this case.

At the first hearing with Judge Hauler on November 20, 2014, although no written and signed consent order had been filed with the circuit court at the time Judge Rockwell recused himself, the GAL presented to the circuit court a document titled "Final Consent Order – Custody & Visitation" ("Consent Order"). This "Consent Order" was not signed by mother. There was no transcript of the hearing on April 2, 2014 for Judge Hauler to review. The GAL, along with father's attorney, informed Judge Hauler that all parties had agreed to the "Consent Order" while Judge Rockwell was presiding, and the only thing left for Judge Hauler to do was to formally enter the order. Mother had not signed the proffered "Consent Order," and mother's counsel argued that mother was actually entitled to receive a trial *de novo* in the circuit court because she had not agreed to the "Consent Order" as drafted by the GAL.[2]

---

[1] Procedurally, this case comes to a panel of this Court after the Court awarded rehearing of the case.

[2] Shannon Dillon was mother's retained counsel until Amanda Padula-Wilson substituted in as counsel after the November 20, 2014 hearing.

The GAL said, "Judge Rockwell didn't participate in any of the actual proceedings in reaching an agreement. All counsel, including one of our expert witnesses that I had present, we retired to the hearing room at the end of the hall and reached an agreement, came in and presented that to the Court. It was accepted by the court." The GAL further explained that the parties were then to come back before the court to enter the order and to determine "support issues." The GAL continued, "And despite the fact that [Judge Rockwell] didn't participate in anything relative to our reaching an agreement, all he did was accept it. And when he accepted it, he asked that I submit a copy of my notes that summarized the agreement into the court file, which was done." Mother, speaking on her own behalf to Judge Hauler, said,

> [S]he [the GAL] again brought a consent order that again I was not allowed to preview or read before coming to the courthouse, despite our requests. And, again, it was not what I had agreed to. And, actually, there was even more added to [the GAL's] version of that consent order of things I had never agreed to at all. Things that we had never even discussed that day. And that's why I couldn't sign it, I didn't agree to those things.

Despite mother's argument, Judge Hauler agreed with the GAL and father's attorney and entered the "Consent Order" over mother's objections.

After various motions hearings in which mother petitioned the court to reconsider the matter, Judge Hauler held a hearing in order to determine whether mother had actually agreed to the terms in the "Consent Order" that the GAL had presented to him. At the March 23, 2015 hearing, Judge Hauler, on the GAL's motion, determined that Amanda Padula-Wilson, counsel for mother, had an actual conflict of interest and could not represent mother on the child custody

and visitation matters.[3]  The matter was continued for mother to attempt to retain another attorney.  However, because mother could not afford to hire an attorney, she represented herself.

At the April 15, 2015 hearing, Judge Hauler noted, "All right.  We are, I hope, gathering for the last time on this matter.  Purpose and sole scope of this hearing is to determine whether or not there was a consent order that was properly entered in this matter by the circuit court, and whether there was an agreement between the parties."[4]  The parties each presented witnesses, and the attorneys themselves made representations to the court about the hearing in front of Judge Rockwell and even about the private settlement conference that occurred among the parties.  At the conclusion of the hearing, Judge Hauler found:

> [T]he Court finds from the evidence that has been presented by the parties that there was clear and convincing evidence regarding a settlement conference, and that it did occur on the second of April of 2014, in the circuit court conference room outside of courtroom five.  The Court further finds by clear and convincing evidence that the terms and conditions of that settlement conference were ultimately related to the trial judge who was sitting at that time in courtroom five.  There is evidence that the trial judge indicated that the guardian *ad litem*, from her notes, prepared an order to embody the terms and conditions of that settlement conference.  That the parties were quizzed to some extent, full extent of which is unknown to the court, but to some extent were quizzed by the presiding judge as to whether or not that settlement agreement had been reached. . . . [T]he Court believes that the order that was entered by this Court on November the 20th of 2014 . . . is in fact the agreement that the parties had reached, and that subsequent thereto there obviously had been buyer's remorse on the part of Mrs. Reilly.

---

[3] Mother's counsel represented without correction that a complaint was filed with the Virginia State Bar, and, after review, the Virginia State Bar issued an opinion finding that her counsel, Padula-Wilson, did not have a conflict of interest in representing mother.

[4] Judge Hauler had previously requested that "all individuals that were present and involved in the negotiations be present to testify as to whether or not there was a settlement."

Ultimately, at a subsequent hearing for determining child support after the change in custody and visitation, Judge Hauler awarded father his attorney's fees throughout the circuit court proceedings in the amount of $9,687.50.

On August 3, 2015, Judge Hauler entered a "Final Order" finding by clear and convincing evidence that mother and father

> entered into an agreement relative to all matters of Custody and Visitation of the minor children that were before the Court on April 2, 2014, and that said agreement was presented to, and accepted by, the Court on that date. AND FURTHER, the "Final Order – Custody and Visitation" entered by this Court on November 20, 2014 accurately reflects the agreement reached by [father] and [mother] on April 2, 2014.

The final order also incorporated the "Final Consent Order – Custody & Visitation," and denied mother's motion to set aside the verdict.

On August 31, 2015, Amanda Padula-Wilson, on behalf of her client, mother, signed and filed a timely notice of appeal in the circuit court.

## II. ANALYSIS

### A. Jurisdiction

At the outset, the GAL argues that mother's notice of appeal was "defective" and that this Court lacks jurisdiction to hear this case on appeal because the notice of appeal "was filed in the circuit court and signed by Ms. Padula-Wilson after the circuit court removed her as counsel of record due to an impermissible conflict." GAL Supplemental Brief at 5. Thus, the GAL asserts that Padula-Wilson could not sign the notice of appeal as counsel of record *on appeal* because the circuit court removed her as counsel for the custody and visitation portion (not child support) of the litigation *in the circuit court*. Because Padula-Wilson had a conflict and, as the GAL argues, could not subsequently represent mother on appeal, the GAL asserts that Padula-Wilson's signature on the notice of appeal should be a nullity and the notice should be

- 5 -

stricken. Padula-Wilson argues that mother properly retained Padula-Wilson's services for appeal.

> [A]n appellate court will acquire jurisdiction over the case if a party aggrieved of the judgment, who was properly before the circuit court, notes an appeal of the judgment in the circuit court in accord with the rules of the appellate court having jurisdiction over the subject matter of the case.

Ghameshlouy v. Commonwealth, 279 Va. 379, 390, 689 S.E.2d 698, 703 (2010). Rule 5A:6, titled "Notice of Appeal," requires a litigant to file a notice of appeal in the circuit court in order to perfect an appeal to the Court of Appeals. See Rule 5A:6 ("No appeal shall be allowed unless, within 30 days after entry of final judgment or other appealable order or decree, . . . counsel files with the clerk of the trial court a notice of appeal . . . ."); see also Rule 5A:16 ("In cases when an appeal lies as a matter of right to the Court of Appeals, such appeal shall be perfected by a timely filing of a notice of appeal pursuant to Rule 5A:6[.]"). It is true that "every pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record . . . and . . . [a] party who is not represented by an attorney. . . shall sign his pleading, motion, or other paper and state his address." Code § 8.01-271.1. Moreover, "if a pleading, written motion, or other paper is not signed, it shall be stricken." Id.

However, Rule 5A:6 does not give the circuit court any new rights or abilities with regard to the parties, but instead operates to alert the circuit court so that the circuit court can prepare its documents and record for transmission to the Court of Appeals – i.e. it is not a filing that requires anything more than a ministerial action from the circuit court. Mother, through counsel she retained for the appeal, noted her appeal to this Court after the circuit court entered a judgment against her. The GAL argues that, because Padula-Wilson was removed as counsel on the child custody and visitation portion of the litigation (she remained counsel of record for the related

child support proceeding), she could not represent mother on appeal to this Court on the issue of child custody and visitation.

We find that a circuit court judge, by removing an attorney below, does not preclude an appellant from retaining a particular attorney, in this case, Padula-Wilson, for the purpose of appealing to *this* Court. Therefore, we find that mother's notice of appeal, signed by Padula-Wilson, was proper.[5]

### B. Consent Order

Mother argues that the circuit court erred when it entered the "Consent Order" without mother's signature and over mother's objection and request for a trial *de novo*.

#### 1. Standard of Review

Whether the "Consent Order" was an enforceable agreement between the parties is a question of law which this Court reviews *de novo*. Brown v. Commonwealth, 279 Va. 210, 217, 688 S.E.2d 185, 189 (2010).

#### 2. Proposed "Consent Order"

"We have repeatedly held that an appeal to the circuit court from a court not of record under Code § 16.1-136 annuls the judgment of the inferior tribunal as completely as if there had been no previous trial . . . ." Walker v. Department of Public Welfare, 223 Va. 557, 563, 290 S.E.2d 887, 890 (1982). Thus, "an appeal from the juvenile court must be heard *de novo* by the circuit court." Fairfax County Dep't of Family Servs. v. D.N., 29 Va. App. 400, 406, 512 S.E.2d 830, 832 (1999).

---

[5] Of course, in this case the circuit court *did not* attempt to preclude Padula-Wilson from noting an appeal on behalf of mother. In fact, the circuit court referenced several times the possibility that Padula-Wilson could represent mother on appeal ("I'm not ordering that Ms. Wilson file an appeal on her behalf. You may consult with her or any other attorney.").

In this case, over mother's objection, the circuit court entered the GAL's proffered "Consent Order" in lieu of proceeding to a trial *de novo*. A circuit court certainly has authority to allow the parties to enter into an agreement that disposes of a case instead of going to trial pursuant to Code § 8.01-576.11, which states:

> If the parties reach a settlement and *execute a written agreement disposing of the dispute*, the agreement is enforceable in the same manner as any other written contract. Upon request of all parties and consistent with law and public policy, the court shall incorporate the written agreement into the terms of its final decree disposing of a case.

(Emphasis added). To "execute" a written agreement means to sign it. See Execute, Black's Law Dictionary (10th ed. 2014) ("To make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form").

However, this "consent order" was not signed by mother or even presented in its written form to Judge Rockwell. It is well settled that a court speaks through its written orders, see Temple v. Mary Washington Hosp., Inc., 288 Va. 134, 141, 762 S.E.2d 751, 754 (2014) (holding that "trial courts speak only through their written orders"), and Judge Rockwell's July 28, 2014 written order shows that the case had been continued for the "presentation of a consent order." Thus, Judge Rockwell had not yet seen or entered a written consent order, according to his own July 28, 2014 order. Consequently, the relevant inquiry before us is whether Judge Hauler could accept the unsigned "Consent Order" as it was proffered to him by the GAL. The GAL, after meeting with mother, mother's attorney, father's attorney, and several other persons involved with the case, presented to Judge Hauler the GAL's *proposed* consent order. At the time Judge Hauler reviewed the "Consent Order," mother had not signed it and had clearly indicated to the judge that she did not want to sign it because it did not reflect her understanding of the parties' private settlement agreement.

In summary, mother's timely appeal of the child custody and visitation order entered in the juvenile and domestic relations district court entitled her to a trial *de novo* in the circuit court on those issues, pursuant to Code § 16.1-296. When the GAL presented mother with the GAL's proposed "Consent Order," it was mother's prerogative to decline to sign the proposed consent order when she was presented with it and to continue the pursuit of her *de novo* appeal in the circuit court. Therefore, we find that the circuit court erred in entering as a "Consent Order" an order to which all parties had not consented and then incorporating it into the final order. We remand the case for a trial *de novo* in the circuit court on child custody and visitation matters, as is the right of a party who requests it by timely appealing to the circuit court from a court not of record. See Code § 16.1-296.

## C.  Attorney's Fees

### *1. Standard of Review*

An award of attorney's fees and costs "is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case." Artis v. Artis, 4 Va. App. 132, 138, 354 S.E.2d 812, 815 (1987); see Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001) ("The key to a proper award of counsel fees is reasonableness under all the circumstances.").

### *2. The Punitive Awarding of Attorney's Fees*

At the conclusion of the hearing determining child support, the circuit court awarded attorney's fees and costs to father in the amount of $9,687.50.  Mother asserts that the circuit court awarded attorney's fees to punish mother for disputing the validity of the "Consent Order."

At the December 5, 2014 hearing, the circuit court said:

> Since I was not privy to the prior interaction between the parties to
> the prior representations that were made to the Court, I'm kind of
> the new kid on the block, but I can also assure you this:  If we are

going through this exercise, and it proves to be an exercise in futility that need not have been undertaken, Ms. Reilly's going to pay the attorney's fees . . . .

Subsequently, at the May 7, 2015 hearing to determine child support based on the change in custody and visitation, Judge Hauler awarded father attorney's fees in the amount of $9,687.50 without further explanation.

The outcome here is controlled by Alexander v. Flowers, 51 Va. App. 404, 658 S.E.2d 355 (2008).  In Flowers, the circuit court said:

> If the evidence is going to be the same that was presented on May 18, you can bank on the fact that the decision is going to be the same.  Now, I don't know what the evidence is going to be, Mr. Kuchinsky [Mr. Flowers's attorney].  But if we are going through an appeal for purposes of going through the motions and the evidence turns out to be exactly what it was on May 18, I can tell you what, we are wasting a whole lot of time, and they are going to get attorney's fees for it.

Id. at 410, 658 S.E.2d at 357.  Just as in Flowers, "it is clear from the record that rather than assessing a fee based upon the financial ability of the parties and other relevant factors, the trial court imposed the award as a punitive measure as it announced it would do."  Id. at 415, 658 S.E.2d at 360.  It is clear from the circuit court's statements to mother that the circuit court awarded father attorney's fees because mother disputed the "Consent Order" – an action which she was entitled to do.

Therefore, we reverse the circuit court's award of attorney's fees.

### D.  Due Process

Mother argues that the circuit court violated mother's Fourteenth Amendment "due process rights when it took evidence from attorneys in the form of testimony without allowing cross examination" at its April 15, 2015 hearing to determine whether mother had agreed to the "Consent Order" in lieu of exercising her right to a new trial.  We find that this issue is moot

because the case must be remanded for a trial *de novo* in the circuit court. See Va. Dep't of State Police v. Elliott, 48 Va. App. 551, 554, 633 S.E.2d 203, 204 (2006) ("We see it as our duty 'not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" (quoting Hankins v. Town of Virginia Beach, 182 Va. 642, 644, 29 S.E.2d 831, 832 (1944))).

### E. Third Party Authority to Alter Visitation[6]

Mother argues that the circuit court, in its final custody order, gave the GAL "sole discretion over determining visitation" between mother and the children. Code § 20-124.2 gives district and circuit court judges the authority to determine custody and visitation of minor children.[7] The Supreme Court has said before:

---

[6] Although our decision to remand for a *de novo* trial necessitates the reversal of the circuit court's final order (and thus its custody and visitation arrangement as well as its support arrangement), we address the assignment of error regarding the determination of visitation because of the likelihood that the issue will arise again on remand. See Smith v. McLaughlin, 289 Va. 241, 259, 769 S.E.2d 7, 17 (2015).

[7] Code § 20-124.2 states (in relevant part):

> A. In any case in which custody or visitation of minor children is at issue, whether in a circuit or district court, the court shall provide prompt adjudication, upon due consideration of all the facts, of custody and visitation arrangements, including support and maintenance for the children, prior to other considerations arising in the matter. The court may enter an order pending the suit as provided in § 20-103. The procedures for determining custody and visitation arrangements shall insofar as practical, and consistent with the ends of justice, preserve the dignity and resources of family members. Mediation shall be used as an alternative to litigation where appropriate. When mediation is used in custody and visitation matters, the goals may include development of a proposal addressing the child's residential schedule and care arrangements, and how disputes between the parents will be handled in the future.

> B. In determining custody, the court shall give primary consideration to the best interests of the child. The court shall

- 11 -

A court of equity cannot abdicate its authority or powers, nor confide nor surrender absolutely to anyone the performance of any of its judicial functions. It may rightfully avail itself of the eyes and arms of its assistants in the proper preparation for judicial determination of the many complicated, difficult, and intricate matters upon which its judgment is invoked, but in it resides the authority, and to it solely belongs the responsibility, to adjudicate them.

Raiford v. Raiford, 193 Va. 221, 230, 68 S.E.2d 888, 894 (1952) (quoting Shipman v. Fletcher, 91 Va. 473, 476, 22 S.E. 458, 460 (1895)). In this case, the final custody order reads:

Mother shall enjoy Supervised Visitation with the minor children. At this time, there is to be no contact, directly or indirectly, between Mother and either of the minor children other than those contacts arranged via Commonwealth Catholic Charities, a supervising agency. . . . It is the goal of Mother to earn additional Supervised visits, expanded Supervised visits, Supervised Visits in the community (via other supervising agencies if Commonwealth Catholic Charities is unable to accommodate this request) and, ultimately, Unsupervised Visitation. Supervision can be altered IN WRITING by the Guardian *ad Litem* based upon Mother's strict compliance with the conditions and other provisions set forth in this Order.

This order, by its plain language, gives the guardian *ad litem* authority to alter supervision without a ruling from or any hearing in the circuit court. Therefore, we hold that it was error for the circuit court to approve such language allowing a third party, even a *guardian ad litem*, total

_____

assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children. As between the parents, there shall be no presumption or inference of law in favor of either. The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest. The court may award joint custody or sole custody.

- 12 -

discretion to decide mother's visitation without providing judicial review because it is inconsistent with the language and purpose of Code § 20-124.2.[8]

## III. CONCLUSION

For the foregoing reasons, we find that this Court has jurisdiction to hear mother's appeal. We reverse and vacate the circuit court's ruling declining to reconsider its erroneous incorporation of the "Consent Order," and remand so that the circuit court can hold a *de novo* trial on appeal from the JDR court's order, as mother had purposely and timely requested such a *de novo* hearing, which is her right. We also reverse the circuit court's award of attorney's fees to father because the fees were awarded as a punitive measure. We decline to address the merits of mother's claim that her due process rights were violated because the issue is mooted by our reversal and remand. Finally, because the issue of visitation will arise again on remand, we hold that the circuit court cannot delegate to a guardian *ad litem* the authority to unilaterally alter visitation as it did here.

Reversed and remanded.

---

[8] This interpretation is also consistent with our decision in the unpublished matter of Padula-Wilson v. Wilson, No. 1203-14-2, 2015 Va. App. LEXIS 123 (Va. Ct. App. Apr. 14, 2015). In that case, the Court concluded,

> Based upon the plain language of Code § 20-124.2 and the established principle that the responsibility to adjudicate cases resides with the judiciary, it was error for the circuit court to order third parties to have complete discretion to decide the mother's visitation without providing for any judicial review of their decisions.

Id. at *38.